716 S.E.2d 302

**Elise Kelly BARROW, Respondent,**

v.

**Sam Carson BARROW, Appellant.**

**No. 4881.**

Court of Appeals of South Carolina.

Heard April 6, 2011.

Decided Aug. 31, 2011.

604

606

Anne Frances Bleecker, of Charleston, for Appellant.

Joseph M. Ramseur, Jr., of Greenville, for Respondent.

KONDUROS, J.

Sam Barrow (Husband) appeals the family court's apportionment of marital income tax debt to him, the award to Elise Barrow (Wife) of a $30,000 special equity in the marital home, and other issues relating to equitable distribution. We affirm in part as modified and reverse in part.

## FACTS

Husband and Wife were married in April 2002 and divorced in June 2007. No children were born of the marriage. During the marriage, Husband was employed as a salesperson for

an orthopedic supply company and earned approximately $93,000 per year. Wife was employed as a sales representative for a uniform supply company, CINTAS, and earned approximately $73,000 annually. Husband and Wife shared a marital home purchased in part with a $40,000 down payment provided by Wife's parents.

Wife admitted to "economic misconduct" during the marriage including chronic overspending and opening credit cards without Husband's knowledge. Husband admitted to failing to file state and federal income tax returns during the marriage. The total tax liability incurred by the parties during the marriage was $260,832. Wife paid taxes on her income using a married filing separately return and paid a total of $92,328 in income taxes. At the time of the final hearing, Husband had contributed nothing to the payment of the original tax debt incurred during the marriage, and his failure to do so resulted in substantial late fees and penalties being assessed.[1]

The family court granted Wife a divorce on the grounds of one year's continuous separation. The family court divided the equity in the marital home and the marital portion of Wife's 401(k) equally. The family court determined Husband was solely responsible for the outstanding tax debt and awarded Wife a $30,000 special equity in the marital home based on the down payment provided by her parents. The family court declined to award attorney's fees to either party.

Husband filed a Rule 59(e), SCRCP, motion claiming the court failed to consider the parties' vehicles in determining the equitable distribution, the outstanding tax liens in calculating the marital home's equity, and the advances Wife took from her marital portion of her 401(k). The family court denied Husband's motion to alter or amend the judgment stating, "[t]he Court has carefully reviewed the Court's file along with the Order, and finds that the Order accurately reflects the findings of the Court made following the hearing on May 5–6, 2009, with respect to the matters addressed in [Husband's] Motion." This appeal followed.

---

1. At the time of the final hearing, the outstanding tax liability including penalties and late fees was $323,506.72.

## LAW/ANALYSIS

 The appellate court reviews decisions of the family court de novo. *Lewis v. Lewis,* 392 S.C. 381, 392, 709 S.E.2d 650, 655 (2011). The appellate court generally defers to the factual findings of the family court regarding credibility because the family court is in a better position to observe the witness and his or her demeanor. *Id.* The party contesting the family court's decision bears the burden of demonstrating the family court's factual findings are not supported by the preponderance of the evidence. *Id.*

### I. Wife's Economic Misconduct

 Husband argues the family court erred in not considering Wife's economic misconduct in equitably apportioning the marital estate. We disagree.

 Section 20–3–620(B) of the South Carolina Code (Supp. 2010) lists fifteen factors for the court to consider in equitably apportioning a marital estate.[2] Fault or marital misconduct affecting the parties' economic circumstances or contributing to the marital breakup is one factor to consider. § 20–3–620(B)(2). The statute grants the family court discretion to decide what weight to assign various factors. *Id.* While this court may make its own findings of fact on appeal, we recognize "the presence of discretion in the family court in valuing marital property and in effecting a division of marital property that is equitable under the circumstances." *Lewis,* 392 S.C. at 391, 709 S.E.2d at 655.

The record shows Wife had a habit of overspending and writing checks before ensuring her company reimbursement checks had been deposited. Testimony also indicated she took a cash advance against one of Husband's credit cards without his permission and took out at least one credit card in Husband's name without his permission. Nevertheless, Husband

---

2. The factors are duration of the marriage and ages of the parties, marital misconduct, the value of marital property, income of the parties, health of the parties, need for additional training to reach income potential, nonmarital property, retirement accounts, alimony, desirability of awarding marital home to either party, tax consequences, support obligations to other parties, debts of the parties, child custody, and other considerations the court deems appropriate. § 20–3–620(B).

testified he had the ability to pay his taxes but elected not to do so. Wife testified the breakup of the marriage was caused by Husband's refusal to file his income taxes. The poor money management and financial decisions by both parties affected their economic circumstances, and Husband did not testify that Wife's overspending caused the breakup of the marriage. The parties were similarly situated with respect to other factors such as age, income, health, work experience, and nonmarital property. Therefore, we do not believe the family court erred in not placing greater weight on Wife's economic misconduct in making its equitable distribution.

## II. Apportionment of Tax Liability

■ Husband argues the family court erred in placing the responsibility for outstanding income tax debt solely on him. We agree.[3]

■ "Marital property" is defined as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation. . . ." S.C.Code Ann. § 20–3–630 (Supp.2010). "For purposes of equitable distribution, 'marital debt' is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable." *Hardy v. Hardy*, 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App.1993). Marital debt, like marital property, must be specifically identified and apportioned in equitable distribution. *Smith v. Smith*, 327 S.C. 448, 457, 486 S.E.2d 516, 520 (Ct.App.1997). In equitably dividing the marital estate, the family court must consider "liens and any other encumbrances upon the marital property, which themselves must be equitably divided, or upon the separate property of either of the parties, and any other existing debts incurred by the parties or either of them during the course of the marriage." § 20–3–620(B)(13).

---

3. In his appellate brief, Husband took the position that Wife should bear a proportional share of the outstanding tax liability as well as the penalties assessed because of the failure to pay. At oral argument, Husband conceded Wife should not be responsible for penalties arising from the past-due income tax debt. Therefore, we limit our discussion to the equitable apportionment of the original tax debt.

After recognizing Wife had filed separate income tax returns during the marriage, the family court concluded "[W]ife has paid her proportional share for *marital taxes.*" (emphasis added). Therefore, it appears the family court determined the income taxes incurred by the parties during the marriage were marital debt. This determination is in accordance with other South Carolina and other states' jurisprudence. *See Ellerbe v. Ellerbe,* 323 S.C. 283, 294, 473 S.E.2d 881, 887 (Ct.App.1996) (finding Husband's income tax liability incurred in the year before the parties' separated was a marital debt); *Phillips v. Phillips,* 290 S.C. 455, 458, 351 S.E.2d 178, 180 (Ct.App.1986) (finding Wife was entitled to equitable portion of income tax refund because the refund was merely a return of income which was marital property); *see also Meints v. Meints,* 258 Neb. 1017, 608 N.W.2d 564, 569 (2000) ("Income tax liability incurred during the marriage is one of the accepted costs of producing marital income, and thus, we hold that income tax liability should generally be treated as a marital debt.").

Although we agree with the family court's determination that the tax on Husband's income was a marital debt, we disagree with the decision to apportion that debt entirely to Husband considering the testimony adduced at trial regarding the parties' incomes and spending. The record shows Wife's income tax payments amounted to approximately 35% of the total marital tax liability. However, the record demonstrates Wife was benefiting from at least 50% of the marital income.

According to Wife's testimony, her check was deposited into a joint account and Husband's check was deposited into a sole account in his name that predated the marriage. From his account, Husband paid the mortgage and his car payment plus he wrote Wife a check each month for some general expenses because he did not like the tedious task of actually writing and mailing checks. According to Wife, she frequently had to badger Husband for the check and some months he did not give her the funds. However, Husband claims he gave Wife money "pretty much whenever" she asked for it. Although Wife's direct testimony on that question is not included in the record, the manner in which the question is posed to Husband

indicates Wife agreed with this statement.[4] Additionally, there was testimony that Husband usually paid the bill for occasions when the couple went out socially.

The record also shows, and Wife does not dispute, that she received payments from Husband totaling $145,450 during the marriage. Whether these monies were for the monthly general expenses, Wife's sole benefit, or a combination of the two is unclear. However, assuming only half of the $145,450 should be treated as inuring to Wife's benefit, that brings the parties' division of marital income much closer to a 50/50 ratio. Husband also testified Wife had spent a cash buffer he had put in their joint account of $5,000 to $10,000 and had taken an advance on a Sears credit card for $5,000.

Because the record contains considerable evidence Wife benefited from at least 50% of the total marital income, the family court erred in attributing a lesser amount of the marital tax liability to Wife. To effect a 50/50 allocation of the original tax debt incurred during the marriage, we attribute to Wife another 14.6% of the original tax liability, $260,832, which amounts to $38,081. Adding this amount to the 35.4% Wife already paid through her income tax withholdings and payments effects a nearly 50/50 split of the original tax liability incurred during the marriage. The remainder of the original tax liability incurred during the marriage remains the marital debt of Husband, and Husband is solely responsible for any penalties or liens resulting from his failure to file state and federal income taxes.

### III. Special Equity in Marital Home

Husband argues the family court erred in determining the $40,000 down payment toward the marital home provided by Wife's parents was a loan and by awarding Wife a $30,000 special equity in the home on that basis. We agree.

---

4. Husband was asked:
 Q. You heard your wife's testimony?
 A. Absolutely, yes.
 Q. And you heard her testify that you never refused to give her money?
 A. That's correct.
 No objection was raised to the characterization of Wife's testimony.

■ "Loans from close family members must be closely scrutinized for legitimacy." *Jenkins v. Jenkins,* 345 S.C. 88, 104, 545 S.E.2d 531, 539 (Ct.App.2001). In *Jenkins,* Wife and Mother testified Mother loaned Wife and Wife's husband money for home renovations. *Id.* at 103–04, 545 S.E.3d at 539. "Neither Wife nor [M]other, however, introduced into evidence a promissory note or cancelled check as proof that the payment was a loan. In fact, [Mother] acknowledged Husband and Wife never signed any kind of note or I.O.U. because [she] never asked them to do so." *Id.* at 104, 545 S.E.2d at 539. This court, in reversing the family court, determined the evidence established at most a "moral obligation" to repay Mother. *Id.* at 104, 545 S.E.2d at 540.

■ In this case, neither party disputes that Wife's parents provided her with $40,000 to put toward the down payment of the marital home. Wife's mother described this transaction as a loan, and Wife and her mother testified that Wife had been paying her mother back sporadically although neither knew the exact amount of any payments.[5] Wife's mother estimated about $30,000 was still outstanding on the loan. Neither Wife nor her mother could produce any documentary evidence of indebtedness or repayment or the outstanding balance. This evidence was insufficient to establish the advance of the funds from Wife's mother was a loan.[6]

Furthermore, the family court erred in removing the down payment funds as a special equity to Wife prior to equitable distribution. The issue of "special equity" in marital property was addressed recently by the South Carolina Supreme Court in *Dawkins v. Dawkins,* 386 S.C. 169, 687 S.E.2d 52 (2010), *abrogated on other grounds by Lewis v. Lewis,* 392 S.C. 381, 709 S.E.2d 650 (2011). In *Dawkins,* the basis for special equity in the marital home was the fact that the home had been inherited from Husband's mother, but the rationale is

5. Wife's mother testified she obtained the $40,000 through a home equity line of credit. Wife indicated that some months she paid the interest on the line of credit as payment toward the loan to her and Husband.

6. Wife listed this as a debt on her financial declaration and claimed she had made payments to her mother. In *Jenkins,* Wife did not list the debt and no testimony was presented regarding any repayment.

equally applicable with respect to a gift of funds for a down payment. *Id.* at 173, 687 S.E.2d at 54. The court in *Dawkins* determined any special equity Husband had in the marital home was not to be apportioned separately but was to be considered as a factor in equitable distribution. *Id.* at 173–74, 687 S.E.2d at 54.

> We approve of the approach announced in *Toler* [*v. Toler*, 292 S.C. 374, 356 S.E.2d 429 (Ct.App.1987) ], decided after adoption of the equitable apportionment statute, as the sole method in accounting for a spouse's special equity in marital property and hold that "the correct way to treat [an] inheritance is as a contribution by [the inheriting party] to the acquisition of marital property [and that] [t]his contribution should be taken into account in determining the percentage of the marital estate to which [the inheriting party] is equitably entitled upon distribution."

*Id.* (all alterations except first in original) (quoting *Toler*, 292 S.C. at 380 n. 1, 356 S.E.2d at 432 n. 1).

Here, as in *Dawkins*, Wife does not argue the home is not marital property to be equitably apportioned between Husband and Wife. Furthermore, Wife has not appealed the family court's finding that the $30,000 is part of the marital estate, so that point is the law of the case.[7] Consequently, following the formula set forth in *Dawkins*, we order the $30,000 awarded as a special equity to Wife be included in the marital home's equity and divided 50/50 between the parties. This results in a $15,000 reduction in overall equitable apportionment to Wife and a $15,000 increase in equitable apportionment to Husband.

## IV. Wife's 401(k), Stock Options, Automobiles, and Cash Advances

Next, Husband contends the family court erred in failing to address certain pieces of property in its order and in failing to consider post-separation withdrawals Wife made from her

---

7. The South Carolina Code indicates a gift to a person from someone other than his or her spouse is nonmarital property. *See* § 20-3-630(A)(1) (stating "property acquired by either party by inheritance, devise, bequest, or gift from a party other than the spouse" is nonmarital). The burden is then on the party seeking to establish the asset is marital in nature.

401(k) account when making its equitable distribution award. We disagree.

■ After the parties separated, Wife withdrew monies from her 401(k) account with CINTAS. Part of what she withdrew was nonmarital property as it was money she contributed prior to the marriage and subsequent to the filing of marital litigation. The marital portion of Wife's 401(k), as of the date of filing, was $45,155. The family court divided this amount equally between Husband and Wife in the equitable distribution. Husband claims the family court failed to consider withdrawals Wife made prior to the final hearing. However, if the family court had not considered the withdrawals, the value of the 401(k) for equitable division would have been $10,599, the amount remaining in the account after Wife's advances. Therefore, the family court properly valued the 401(k) for equitable distribution.

■ Husband also argues the family court erred in not considering Wife's CINTAS stock options among the marital assets for equitable division. However, this issue was not addressed in the family court's order, and Husband did not raise it in his Rule 59(e), SCRCP, motion.[8] Therefore, it is not preserved for our review. *See S.C. Dep't of Transp. v. First Carolina Corp. of S.C.*, 372 S.C. 295, 301–02, 641 S.E.2d 903, 907 (2007) (stating to be preserved for appellate review, issue must have been raised to and rule upon by the trial court).

■ Husband argues the family court abused its discretion by not considering the parties' automobiles in the equitable distribution award. Wife testified she paid the $16,000 outstanding on her Mercedes with her marital share of the 401(k). Because the family court did not specifically address Wife's car or Husband's Suburban in its order, the result is the parties are responsible for their own vehicle. While the family court is instructed to "set forth the specific findings of fact and conclusions of law to support [its] decision," the failure to do so does not require a remand. Rule 26(a), SCRFC. "[W]hen an order from the family court is

---

8. Language used in the family court's order denying Husband's 59(e) motion suggests the family court may have ruled from the bench on issues not addressed in its order. However, that portion of the transcript is not included in the record on appeal.

issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Griffith v. Griffith,* 332 S.C. 630, 646–47, 506 S.E.2d 526, 535 (Ct.App.1998) (quoting *Holcombe v. Hardee,* 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)).

The record contains no finding regarding Husband's 2003 motorcycle or the $3,000 advanced to Wife by Husband during the pendency of the divorce. However, assuming the family court would have split equally the equity in the motorcycle, valued by Husband at $7,444.77, Wife would have gained $3,722.38 to her side of the equitable division. By not equitably dividing the motorcycle, the family court, in effect, repaid the $3,000 advance to Husband by allowing him to keep the asset.

Based on the record before us and in our view of the preponderance of the evidence, the result of the family court's action, or inaction, was appropriate in the general scheme of equitable division. By the parties keeping their respective car or motorcycle, the family court has made an in-kind distribution, which is favored, and permitted the parties to become disentangled from each other financially with respect to those items. *See Craig v. Craig,* 358 S.C. 548, 557–58, 595 S.E.2d 837, 842 (Ct.App.2004) ("The court, however, should first attempt an 'in-kind' distribution of the marital assets."). Therefore, we affirm the family court's distribution of these assets.

## V. Marital Home Equity—Tax Liens and Mortgage Payments

Husband claims the family court erred in not subtracting the outstanding tax liens on the home in determining the amount of equity in the marital home. We disagree.

The tax liens are a direct result of Husband's failure to pay income taxes. As previously discussed, Husband conceded at oral argument that penalties resulting from his failure to pay income taxes are properly assigned to him. It would penalize Wife to include the liens in determining the equity amount.

Therefore, we affirm the family court's decision not to consider the tax liens in determining the equity in the marital home.

Additionally, we affirm the family court's decision not to credit Husband with his ongoing mortgage payments since Wife vacated the marital home. Husband and Wife were living separate and apart and paying approximately $1,600 per month in mortgage payments and rent respectively. These were the parties' living expenses post-separation and do not entitle Husband to any special credit.

## VI. Attorney's Fees

Husband argues the family court erred in not holding Wife responsible for his attorney's fees. We disagree.

The award of attorney's fees in a domestic action rests within the sound discretion of the family court. *Stevenson v. Stevenson*, 295 S.C. 412, 415, 368 S.E.2d 901, 903 (1988). In deciding whether to award attorney's fees and costs, the family court should consider "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; [and] (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). In determining a reasonable attorney's fee the family court should consider "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; [and] (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

As discussed previously, the parties were similarly situated economically during the marriage and have the same means for earning income as before. Furthermore, even if we modify the original tax liability and special equity determination, Husband did not obtain greatly beneficial results beyond those of Wife. The assets and debts are split 50/50 and Husband is still responsible for the tax penalties, a major point of contention in the original equitable distribution and appeal. Therefore, we discern no error in the family court's decision not to award Husband attorney's fees.

## CONCLUSION

We affirm the family court's equitable distribution award with the following modifications: Wife and Husband shall bear the original tax liability incurred during their marriage in a 50/50 ratio. Because Wife has already paid approximately 35.4% of the marital taxes, the remaining debt assessed to Wife is 14.6% of the total tax liability incurred by both parties during the marriage—$38,081. We find the $40,000 advance from Wife's parents for the down payment on the marital home was not a loan, and the $30,000 special equity awarded to Wife is to be included in the equity calculation of the marital home and divided equally between Husband and Wife. We affirm the result of the family court's order with respect to the personal property of the parties, and we affirm the family court's denial of attorney's fees to Husband.

**AFFIRMED IN PART AS MODIFIED AND RE-VERSED IN PART.**

FEW, C.J., and THOMAS, J., concur.