736 S.E.2d 292

**Gregory H. JENKINS, Respondent,**

v.

**Shaniqua D. JENKINS, Appellant.**

**Appellate Case No. 2010–152986.**

**No. 5058.**

Court of Appeals of South Carolina.

Heard May 8, 2012.
Decided Dec. 5, 2012.

Shaniqua D. Green, formerly Shaniqua D. Jenkins, of Charleston, pro se, for Appellant.

Justin Scott Byars, of Mays Foster Gunter & Murphy, LLP, of Columbia, for Respondent.

WILLIAMS, J.

Shaniqua D. Jenkins (Wife) appeals the family court's division of Gregory H. Jenkins' (Husband) military retirement benefits, arguing the date of valuation for the retirement benefits and the percentage awarded to Wife was incorrect. In addition, Wife asserts the family court's reliance on *Wolfe v. Wolfe*, 220 S.C. 437, 68 S.E.2d 348 (1951), was a violation of her equal protection rights because that decision relies on outdated views regarding women. Wife also claims the family court improperly imputed income to Husband and improperly reduced Husband's child support obligation. Finally, Wife argues Husband's assertion that the vehicle debt is not subject to equitable distribution is flawed because there is significant evidence of joint benefit. We affirm as modified and remand.

**FACTS**

Husband and Wife married on August 14, 1993, when Husband was twenty-three years old and Wife was twenty-one years old. Once the parties married, they moved to Fort Polk, Louisiana where Husband was stationed with the United States Army for approximately two years. During that time, they had one daughter, Tylia, born on June 11, 1994. One month after Tylia was born, the parties agreed to let Wife's mother care for Tylia in Charleston, South Carolina. According to Wife, they agreed upon this arrangement so they could try to reconcile their marital differences and work out their financial issues. Shortly thereafter, Wife moved back to Charleston to work for the Charleston County Sheriff's Department as a police officer. Wife testified the decision to move back to Charleston was motivated by their financial issues and her desire to further her education so it would be easier to find a job when Husband was again transferred in the military.

When questioned at the final hearing about her desire to pursue additional education, Wife testified the Sheriff's Department was changing rapidly, and to be promoted, she needed to improve her education more. To that end, Wife began attending North Carolina Central University in 1997 where she double majored in English and Political Science, receiving her B.A. degree in 1999. The same year she obtained her B.A. degree from North Carolina Central Universi-

ty, she decided to move to Washington, D.C. Initially, she lived with a relative, and her mother took care of Tylia and her son from a previous relationship. Wife testified Husband talked about relocating to D.C., but this fell through, and Husband filed for divorce in 2000. According to Wife, the parties did not pursue the divorce because Husband thought they could reconcile their marital differences.

Wife stated she could not earn an adequate living with only a bachelor's degree, so between 2000 and 2004, she earned her paralegal certification as well as a master's degree in Public Policy and Social Policy from Georgetown University. During this time, Wife's mother assisted Wife in caring for the children. After obtaining her master's degree in 2004, she worked for a judge in New York for two years, and then she returned to Washington, D.C. Her children lived with her in Maryland while she worked at various agencies within the federal government. In 2006, Wife's mother, who lived in Charleston, died from cancer. After her mother's death, Wife accepted a job offer in Charleston, and moved back that same year to Charleston with her children. She remained in Charleston a year before returning to Washington, D.C. in 2008, where she and her children were living on the date of the final hearing.

Husband also testified at the final hearing about the parties' relationship and living arrangements during their marriage. Husband stated he was transferred from Fort Polk, Louisiana to Fort Bliss, Texas in 1996 where he served for two years. Wife chose not to move to Fort Bliss, instead remaining in Charleston with her mother, Tylia, and her son. In 1998, Husband was deployed for one year to Korea. When Husband returned in 1999, he moved to Fort Gordon, Georgia where he was stationed with periodic overseas deployments until he retired from the military on January 1, 2009. Upon Husband's retirement, he began to receive $1,878 per month in military retirement benefits.

Prior to Husband's retirement in January 2009, the parties agreed to end the marriage in November 2007. Husband filed a petition for divorce on January 9, 2008. Wife filed an answer and counterclaimed for equitable distribution of personal property and debts, division of Husband's retirement

benefits, child custody, child support, and attorney's fees. Both parties agreed they lived together for only approximately three and a half years of their sixteen-year marriage.

The family court held a hearing on August 24, 2009. In its final order filed on October 1, 2009, the family court granted the parties a divorce based on one year's continuous separation. The court awarded the parties joint custody of their daughter, Tylia. In its computation of child support, the family court imputed an additional $2,000 to Husband as income based on his 2008 earnings. With Husband's monthly military retirement pay of $1,878, Husband's monthly income totaled $3,878, and Wife's monthly income was $8,500. Based on this income, Husband was required to pay Wife $321 per month in child support.

The family court ordered the parties to maintain all real and personal property in their respective possessions. It also required each party to pay his or her own debts incurred since the parties' separation on May 15, 1995, which included Wife's college expenses and the outstanding debt on Wife's car. In determining Wife's entitlement to Husband's military retirement benefits, the family court found Wife was only entitled to the portion of his benefits that accrued during the three and a half years the parties lived together. As such, the family court awarded Wife half of the benefits accruing during that time period for a net monthly payment of $144.94.[1]

Wife filed a Rule 59(e), SCRCP, motion for reconsideration, arguing, among other things, the family court improperly calculated Wife's share of Husband's military retirement bene-

---

1. In its calculation, the family court found the marital portion of the retirement benefits by dividing the number of years the parties lived together by the number of years of Husband's military service, and then it found Wife was entitled to half of that sum, which equated to approximately 9% of Husband's entire retirement benefits. (3.5/20.42 = .1714; .1714 × .50 = .0857 (or 9%)). It multiplied this share by Husband's monthly retirement check of $1,878 and found Wife should receive $160.94, less 10% taxes, totaling approximately $144.94 per month from Husband. We note that Defense Finance and Accounting Services (DFAS) was not directly paying Wife her portion of Husband's retirement benefits when the final order was issued. Because DFAS normally directly deducts taxes from payments such as these, the family court temporarily accounted for payment between the parties by deducting 10% from the amount owed to Wife.

fits. Wife argued Husband received $1,878 per month in retirement benefits, and because Husband acquired the majority of these benefits during their sixteen-year marriage, she was entitled to 50% of those benefits, or $939 per month. The family court issued an amended order on January 27, 2010, and calculated Wife's share of the retirement benefits based on the total number of years of marriage, but instead of awarding Wife 50%, it awarded Wife 11% of the marital share of the benefits, resulting in the same monthly payout to Wife as contained in the original October 2009 order.[2]

In support of its decision, the family court stated,

This Court feels that to award [Wife] an amount greater than this would be to reward a spouse who 1) benefitted greatly from her estrangement from her husband[;] 2) was not a credible witness[;] 3) does not need the funds as greatly as the other party[;] and, finally 4) will, for the foreseeable future, always be in a much better financial position than the other party.

The family court affirmed the remainder of its original order. This appeal followed.

## STANDARD OF REVIEW

▇▇▇▇ "The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). In appeals from the family court, the appellate court reviews factual and legal issues de novo. *Simmons v. Simmons*, 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011). "De novo review permits appellate court fact-finding, notwithstanding the presence of evidence supporting the [family] court's findings." *Lewis*, 392 S.C. at 390, 709 S.E.2d at 654–55. However, this broad standard of review does not require the appellate court to disregard the factual findings of the family court or ignore the fact that the family court is in the better position to assess

---

2. In its recalculation, the family court found the marital share of the retirement benefits to be 78%. To reach this figure, it divided the number of years the parties were married by the number of years of Husband's military service. (16/20.42 = .7835 (or 78%)). Based on its conclusion that Wife was entitled to 11% of the marital portion, or approximately 9% of Husband's entire military benefits, it awarded Wife approximately the same monthly payout as in the October 2009 order. (.7835 × 0.11 (or 11%) = .086 (9%); .086 × $1,878 = $161.51).

the credibility of the witnesses. *Pinckney v. Warren*, 344 S.C. 382, 387, 544 S.E.2d 620, 623 (2001). Moreover, the appellant is not relieved of the burden of demonstrating error in the family court's findings of fact. *Id.* at 387–88, 544 S.E.2d at 623. Accordingly, we will affirm the decision of the family court unless its decision is controlled by some error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by this court. *See Lewis*, 392 S.C. at 390, 709 S.E.2d at 654–55.

## LAW/ANALYSIS

### (1) Wife's Share of Husband's Retirement Plan

■ Wife first argues her direct and indirect contributions to the marriage entitled her to a greater share of the marital estate.[3] Thus, Wife argues the family court erred in only apportioning Wife 11%[4] of the marital share of Husband's retirement benefits and in valuing Husband's retirement plan as of May 15, 1995, because the parties were not legally separated at that time. We agree in part.

In apportioning the marital estate, the family court must consider fifteen criteria specified by section 20–3–620 of the South Carolina Code (Supp.2011), giving to each such weight as it finds appropriate based on the facts of the case. *See Johnson v. Johnson*, 296 S.C. 289, 297, 372 S.E.2d 107, 112 (Ct.App.1988). These criteria guide the family court in exercising its discretion over apportionment of the marital property and are nothing more than equities to be considered in reaching a fair distribution of marital property. *Id.* at 297–98, 372 S.E.2d at 112. The criteria subserve the ultimate goal of

---

3. In Wife's first argument on appeal, she does not detail which marital assets the family court improperly divided, only that it failed to satisfactorily consider her contributions to the marriage in its division of the marital estate. Because the only marital asset at issue is Husband's military retirement benefits, we combine her first and second issues on appeal and address her argument as it pertains to the family court's division of Husband's military retirement benefits.

4. Wife claims the family court awarded Wife only 1% of Husband's retirement benefits. This calculation is inaccurate. The family court awarded Wife approximately 9% of Husband's entire retirement benefits or 11% of what he accrued during the course of their sixteen-year marriage.

apportionment, which is to divide the marital estate, as a whole, in a manner which fairly reflects each spouse's contribution to the economic partnership and also the relative effect of ending that partnership on each of the parties. *Sanders v. Sanders,* 396 S.C. 410, 418, 722 S.E.2d 15, 18 (Ct.App.2011).

Military retirement benefits accrued during the marriage are subject to equitable distribution. *Tiffault v. Tiffault,* 303 S.C. 391, 393, 401 S.E.2d 157, 158 (1991). The appropriate factors to consider when making an equitable distribution award include the following:

(1) the duration of the marriage along with the ages of the parties at the time of the marriage and at the time of the divorce; (2) marital misconduct or fault of either or both parties, if the misconduct affects or has affected the economic circumstances of the parties or contributed to the breakup of the marriage; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) either spouse's need for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding to the spouse having custody of any children the family home as part of equitable distribution or the right to live in it for reasonable periods; (11) the tax consequences to either party as a result of equitable apportionment; (12) the existence and extent of any prior support obligations; (13) liens and any other encumbrances on the marital property and any other existing debts; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) any other relevant factors that the family court expressly enumerates in its order.

§ 20–3–620(B).

Reviewing the record and the family court's order, we hold the family court took these statutory factors into consideration

when it chose to award Wife a share of Husband's retirement benefits. In its order awarding Wife a portion of Husband's retirement benefits, the family court stated,

> This Court feels that to award [Wife] an amount greater than [11%] would be to reward a spouse who 1) benefitted greatly from her estrangement from her husband[;] 2) was not a credible witness[;] 3) does not need the funds as greatly as the other party[;] and, finally 4) will, for the foreseeable future, always be in a much better financial position than the other party.

In addition, the family court held that Wife's income far exceeded that of Husband, even if he were to maintain employment that paid him similar to what he earned for a brief period in 2008 when he was a technical instructor for military recruits. Without any evidence that Husband had the ability to earn more, the family court concluded Husband needed the income from his retirement benefits much more than Wife.

Reviewing the parties' financial declarations and income tax returns, we agree that Husband demonstrated a greater need for his retirement benefits. Wife earned $58,266 in 2006, $61,814 in 2007, and $93,336 in 2008. These earnings are supported by her financial declaration submitted to the family court at the final hearing, in which she claimed she earned $7,875 per month. Husband, on the other hand, earned $26,665 in 2006, $3,344 [5] in 2007, and $41,338 in 2008. On the date of the final hearing, Husband had retired and stated his only current income was $1,878 in monthly military retirement benefits.

The family court also considered Wife's superior education and training, which would allow her to continue to achieve income that far exceeded that of Husband. As required by section 20–3–620, the family court noted that neither party had acquired non-marital property, alimony was not at issue, and neither party had additional support obligations outside the marriage. Although the family court recognized Wife incurred college loan debts during their marriage to further

---

5. Husband's diminished income in 2007 was due to his overseas deployment. Husband testified he earned "more than normal" in 2007, but because he was deployed overseas, he was not required to pay federal taxes.

her education, it concluded this was "an excellent investment on her part because it has resulted in a good job with many benefits." Last, the family court acknowledged Wife was in excellent health, whereas, Husband had significant health issues that limited his ability to earn an income.

While we concur with the family court's findings, we conclude Wife's contributions to the marriage entitled her to a greater share of Husband's military retirement benefits. Specifically, Wife was the primary caretaker for the parties' daughter throughout their marriage and assumed a greater financial role in their child's upbringing than Husband. Wife cites to several cases in support of her claim that she is entitled to share *equally* in Husband's retirement benefits. Even though these cases lend support for Wife's argument that she is entitled to a greater share, we find the factual circumstances in those cases distinguishable from those of Husband and Wife. Unlike those cases, Wife and Husband shared a marital home for only a small portion of their marriage; Wife never traveled with Husband to any of his deployments, either in the States or abroad; and Wife had a superior education and income to that of Husband. *See Ball v. Ball*, 314 S.C. 445, 448, 445 S.E.2d 449, 451 (1994) (finding wife was entitled to 23% of husband's nonvested military retirement benefits when parties were married for ten years, wife moved numerous times with husband over the course of the marriage, and wife cared for husband's two children from a prior marriage); *Curry v. Curry*, 309 S.C. 539, 541–42, 424 S.E.2d 552, 554 (Ct.App.1992) (awarding wife 40% of husband's military retirement when wife moved from place to place for the benefit of husband's military career, wife was a homemaker at husband's insistence, wife only had a high school education, and husband committed adultery); *Connors v. Connors*, 310 S.C. 76, 79, 425 S.E.2d 65, 67 (Ct.App.1992) (awarding wife 40% of husband's military retirement where wife moved and traveled with husband, took an active role in his military career, was physically abused by husband, was partially disabled while husband was in good health, and had inadequate income and earning potential). Accordingly, we hold a more equitable apportionment is to award Wife 20% of the marital portion of Husband's retirement benefits that accrued during the marriage. Thus, we modify the family

court's order to reflect this adjustment and remand for a recalculation of Wife's entitlement consistent with this opinion.

█ Wife also claims the family court erred in calculating her entitlement to Husband's military retirement benefits based on the approximate date of May 15, 1995, when she moved from Fort Polk, Louisiana, to Charleston, South Carolina, instead of the filing date [6] in October 2009. While the family court initially valued Wife's share of Husband's military benefits based on the three and a half years that the parties admitted they lived together over the course of their sixteen-year marriage and awarded Wife half of that amount, it changed the valuation date in its amended final order. In the amended final order, the family court based Wife's entitlement to Husband's military benefits on their sixteen-year marriage. As a result, we find the family court chose the proper valuation date for calculating Wife's share of Husband's retirement benefits.

### (2) Reliance on *Wolfe v. Wolfe*

Wife argues the family court improperly relied on *Wolfe v. Wolfe*, 220 S.C. 437, 440, 68 S.E.2d 348, 349 (1951), which states that "the husband has the right, acting reasonably, to choose where the family shall reside, and when the wife refuses to go with him, she is guilty of desertion." She claims that certain findings of fact in the amended final order create a gender-based classification and rely upon outdated views, such as those from *Wolfe*, which violate the Equal Protection Clause of the Fourteenth Amendment. We find this argument is not properly before this court.

Upon review of the family court's initial final order and its amended final order, there is no mention of or reliance upon *Wolfe*. Moreover, Wife did not raise this issue in her Rule 59(e), SCRCP, motion to reconsider. *See Barrow v. Barrow*, 394 S.C. 603, 615, 716 S.E.2d 302, 309 (Ct.App.2011) (finding an issue was not preserved for review because family court did

---

6. Wife misstates the filing date of this action in her brief. Husband filed for divorce on January 9, 2008, and the family court entered a final order granting the parties a divorce on October 1, 2009. Because the parties were legally married to each other for a period slightly over sixteen years, we find the family court did not err in this respect.

not address it in its order and party failed to raise it in Rule 59(e), SCRCP, motion). Thus, we decline to address this argument.

### (3) Husband's Income

■ Next, Wife avers the family court understated Husband's income at the final hearing and should have instead relied upon Husband's 2008 earnings in determining Husband's child support obligation. In addition, Wife claims the family court erred in reducing Husband's child support obligation without sufficient evidence of changed circumstances. We disagree.

■ The family court has the discretion to impute income to a party with respect to awards of alimony or child support. *Sanderson v. Sanderson*, 391 S.C. 249, 255, 705 S.E.2d 65, 68 (Ct.App.2010). If the obligor spouse has the ability to earn more income than he is earning, the family court may impute income according to what he could earn by using his best efforts to gain employment equal to his capabilities. *Dixon v. Dixon*, 334 S.C. 222, 240, 512 S.E.2d 539, 548 (Ct.App.1999) (citing 24A Am.Jur.2d, Divorce & Separation § 781 (1998)); *see also Blackwell v. Fulgum*, 375 S.C. 337, 347, 652 S.E.2d 427, 432 (Ct.App.2007) (stating imputing income to a party who is voluntarily unemployed or underemployed is appropriate when determining child support obligations). An award of alimony based on such imputation may be a proper exercise of discretion even if it exhausts the obligor spouse's actual income. *Dixon*, 334 S.C. at 240, 512 S.E.2d at 548.

In the family court's final order, it found Husband received $1,878 per month in military retirement benefits. However, the family court chose to impute an additional $2,000 per month to Husband based on his earnings from part of 2008 for a total of $3,878 per month in gross income. Although Wife claims the family court should have imputed earnings to Husband based on his 2008 income on his tax return of $41,338, or $3,445 per month, the family court actually imputed more income to Husband than Wife is now claiming should be imputed on appeal.

Husband claims we should agree with Wife on this issue, thereby reducing his child support obligation. Despite Wife's

argument and Husband's concession, we hold it is appropriate to affirm the family court's calculation because this figure was within the range of evidence presented to the family court. *See generally Bennett v. Rector,* 389 S.C. 274, 280, 697 S.E.2d 715, 718 (Ct.App.2010) (finding mother had the ability to earn between $149,000 and $252,000 based on her own testimony and choosing to impute the lower salary to mother to establish her grossly month income for purposes of establishing her child support obligation); *Spreeuw v. Barker,* 385 S.C. 45, 65–66, 682 S.E.2d 843, 853–54 (Ct.App.2009) (finding family court properly resorted to evidence presented at trial, namely father's monthly law firm withdrawals and corporate income tax returns, in determining father's gross income for purposes of calculating his child support obligation). Husband also testified at trial that he would be receiving a $500 monthly stipend from the Department of Veteran Affairs, which was not listed on his financial declaration. Adding this amount to Wife's figure equates to almost the exact figure the family court imputed to Husband for purposes of calculating child support. *See McCall v. Finley,* 294 S.C. 1, 4, 362 S.E.2d 26, 28 (Ct.App.1987) ("[W]hatever doesn't make any difference, doesn't matter."). Accordingly, we find the family court did not err in imputing $2,000 in income to Husband because Wife failed to demonstrate the family court's calculation prejudiced her. *See Cox v. Cox,* 290 S.C. 245, 248, 349 S.E.2d 92, 94 (Ct.App.1986) (stating appellant has the burden of showing that family court's error was prejudicial).

Wife also claims the family court erred in reducing Husband's child support obligation because Husband failed to submit sufficient evidence of changed circumstances. We disagree.

Initially, we note Wife failed to include the family court's prior order setting forth the amount of temporary child support in the record on appeal. *See Bonaparte v. Floyd,* 291 S.C. 427, 444, 354 S.E.2d 40, 50 (Ct.App.1987) (stating the appellant bears the burden of providing a record on appeal sufficient for intelligent review); *see also* Rule 210(h), SCACR ("Except as provided by Rule 212 and Rule 208(b)(1)(C) and (2), the appellate court will not consider any fact which does not appear in the Record on Appeal."). Regardless, the prior child support order was issued pendente lite; therefore, any

change in circumstances was not dispositive of Husband's obligation. The temporary child support order was simply that, a temporary agreement reached in contemplation of further negotiations and/or judicial proceedings. *See Eubank v. Eubank*, 347 S.C. 367, 373–74, 555 S.E.2d 413, 416 (Ct.App. 2001) (finding the family court erred in treating a temporary order as a final adjudication of the parties' rights and responsibilities because it was only a temporary agreement, and as such, did not permanently resolve whether the husband was entitled to a modification or termination of his support obligation). Thus, we affirm the family court on this issue.

Despite our affirmance of the family court's award of child support under the final order, our decision to increase Wife's share of Husband's military retirement benefits diminishes Husband's gross income. Because Husband's income will be decreased as a result of this decision, his child support obligation will likewise be affected. As a result, we remand the issue of child support to the family court for a recalculation based on Husband's adjusted gross income. *See Spreeuw v. Barker*, 385 S.C. 45, 69, 682 S.E.2d 843, 855 (Ct.App.2009) (finding family court erred in including certain debts in father's gross income for purposes of child support and remanding for a recalculation of father's child support obligation based on this decrease in income); *Arnal v. Arnal*, 363 S.C. 268, 283, 609 S.E.2d 821, 829 (Ct.App.2005) *aff'd as modified*, 371 S.C. 10, 636 S.E.2d 864 (2006) (finding family court erred in amount it imputed to father as income and remanding the issue of child support for recalculation based on the proper income).

### (4) Nissan Sentra

Last, Wife argues the family court improperly required her to pay the remaining debt of $4,513.06 on the parties' Nissan Sentra when Husband also benefitted from the use of the vehicle. We disagree.

For purposes of equitable distribution, "marital debt" is debt incurred for the joint benefit of the parties regardless of whether the parties are legally jointly liable for the debt or whether one party is legally individually liable. *Hardy v. Hardy*, 311 S.C. 433, 436–37, 429 S.E.2d 811, 813 (Ct.App. 1993).

At trial, Husband stated he initially drove the Nissan Sentra. At the time he was driving the Nissan Sentra, Husband had purchased a Honda Accord for Wife, which she was driving. Husband, however, told Wife he was unable to afford both car payments. Husband missed three car payments, and the bank repossessed the Nissan Sentra. Wife eventually got the Nissan Sentra back and owned that car on the date of the final hearing.

Husband's and Wife's vehicles were purchased during the marriage; thus, the vehicles were marital property. Viewing the overall apportionment of the marital estate, we find the family court had the discretion to require the parties to pay the debt on the vehicle in their respective possession. *See Sanders v. Sanders*, 396 S.C. 410, 419, 722 S.E.2d 15, 19 (Ct.App.2011) (in reviewing the division of marital property, this court looks to the fairness of the overall apportionment and will affirm if the end result is equitable). Husband's financial declaration reflects his monthly car payment was $410, and Wife's financial declaration reflects her monthly car payment was $732. Based on the parties' incomes, we find it reasonable to require each party to pay for their own vehicle. *See Thomson v. Thomson*, 377 S.C. 613, 624, 661 S.E.2d 130, 136 (Ct.App.2008) ("The same rules of fairness and equity that apply to the equitable distribution of marital property also apply to the equitable division of marital debts."). Although both of these vehicles were purchased during the course of the parties' marriage, we find that Wife's sole use and ownership of the Nissan Sentra on the date of the final hearing support the family court's decision to require Wife to pay the outstanding debt on the vehicle. *See Woodward v. Woodward*, 294 S.C. 210, 216, 363 S.E.2d 413, 417 (Ct.App.1987) (finding that although debt was acquired during parties' marriage, the family court had the ability to require husband to repay entirety of marital debt, particularly when husband had a greater ability to pay). Accordingly, we affirm the family court's decision on this issue.

## CONCLUSION

Based on the foregoing, the family court's decision is **AFFIRMED AS MODIFIED and REMANDED.**

THOMAS and LOCKEMY, JJ., concur.