753 S.E.2d 566

Natalie Elizabeth Crews BURGESS, Respondent,

v.

William Arthur BURGESS, Appellant.

Appellate Case No. 2012–213455.

-. No. 5189.

Court of Appeals of South Carolina.

Heard Dec. 12, 2013.

Decided Jan. 15, 2014.

100

Oscar W. Bannister, of Bannister & Wyatt, LLC, of Greenville, for Appellant.

Joseph M. Ramseur, Jr., of Mitchell Ramseur, LLC, of Greenville, for Respondent.

LOCKEMY, J.

In this appeal from the family court, William Burgess (Husband) appeals the court's final order in his divorce from Natalie Burgess (Wife), arguing the court erred in: (1) imputing income to Husband; (2) dividing the marital estate; (3) awarding alimony to Wife; and (4) awarding attorney's fees to Wife. We affirm in part and remand to the family court.

## FACTS/PROCEDURAL BACKGROUND

Husband and Wife were married in 1982. During their marriage, the parties had four children, all of whom are now emancipated. Wife received a B.A. in psychology and worked at a bank until having the parties' first child in 1986. Wife did not work again until 2008 when a downturn in the economy required that she return to the workforce. She went to work as the assistant director of advancement at St. Joseph's Catholic School and earned $28,000 per year, as well as reduced tuition for the parties' two youngest children. Wife was laid off in 2009 and enrolled at Clemson University to obtain a master's degree in student affairs. She was scheduled to earn her degree in May 2012 and had not secured a job at the time of trial.

Husband received a B.S. in business administration and worked for several commercial real estate brokerage firms before becoming a partner with NAI Earle Furman. Between 2001 and 2007, Husband earned between $91,789 and $675,374 annually. In February 2009, following the collapse of the real estate market, Husband was involuntarily bought out of his ownership in NAI Earle Furman. Subsequently, Husband founded his own commercial real estate firm, The Burgess Group. Husband's income fell from $384,237 in 2007 to approximately $32,000 in 2011.

Wife moved out of the marital residence on April 6, 2009, and filed a complaint for separate maintenance and support on April 7, 2009. According to Wife, she left Husband for multiple reasons including: (1) her belief that he was paying inappropriate attention to other women; (2) he was controlling and secretive with the family finances; and (3) he withdrew all of the money from their joint checking accounts and told her he would no longer be giving her a weekly allowance of $1,000. On March 24, 2010, Husband filed an answer and counterclaim in which he denied Wife's entitlement to alimony and attorney's fees. A trial was held before the family court on February 23 and 24, 2012.

In a March 9, 2012 final order, the family court granted the parties a divorce on the ground of one year's continuous separation. Subsequently, in a May 15, 2012 final order of equitable apportionment, alimony, and attorney's fees, the family court: (1) imputed $100,000 in annual income to Husband; (2) imputed $35,000 in annual income to Wife; (3) ordered Husband to pay Wife $2,150 per month in alimony; (4) divided the marital estate; and (5) ordered Husband to pay Wife $67,589 in attorney's fees and costs. Husband filed a motion to reconsider challenging the imputation of income and award of alimony to Wife, arguing there was no evidence he was voluntarily underemployed. He also argued the attorney's fees award was improper because it was based on Husband's imputed income. The family court denied Husband's motion to reconsider. This appeal followed.

## STANDARD OF REVIEW

The standard of review in an appeal from the family court is de novo. *Simmons v. Simmons*, 392 S.C. 412, 414,

709 S.E.2d 666, 667 (2011). This broad standard of review does not require the appellate court to disregard the factual findings of the family court or ignore the fact that the family court is in the better position to assess the credibility of the witnesses. *DiMarco v. DiMarco*, 399 S.C. 295, 299, 731 S.E.2d 617, 619 (Ct.App.2012). An appellate court will affirm the decision of the family court unless the decision is controlled by an error of law or the appellant satisfies the burden of showing the preponderance of the evidence actually supports contrary factual findings by the appellate court. *Id.*

## LAW/ANALYSIS

### I. Husband's Imputed Income

■ Husband argues the family court erred in imputing $100,000 in income to him without evidence he was voluntarily underemployed or that he could have earned that amount using his best efforts.

■ "[I]n determining child support or alimony obligations, the family court has the discretion to impute income to a party who is voluntarily unemployed or underemployed." *Lewis v. Lewis*, 400 S.C. 354, 361–62, 734 S.E.2d 322, 326 (Ct.App.2012).

> If the obligor spouse has the ability to earn more income than he is in fact earning, the court may impute income according to what he could earn by using his or her best efforts to gain employment equal to his capabilities, and an award of [support] based on such imputation may be a proper exercise of discretion even if it exhausts the obligor spouse's actual income.

*Id.* at 362, 734 S.E.2d at 326 (quoting *Dixon v. Dixon*, 334 S.C. 222, 240, 512 S.E.2d 539, 548 (Ct.App.1999)). "Whether termed voluntary underemployment, imputation of income, or the failure to reach earning potential, the case law is clear that when a payor spouse seeks to reduce support obligations based on his diminished income, a court should consider the payor spouse's earning capacity." *Gartside v. Gartside*, 383 S.C. 35, 44, 677 S.E.2d 621, 626 (Ct.App.2009) (citing *Kelley v. Kelley*, 324 S.C. 481, 488, 477 S.E.2d 727, 731 (Ct.App.1996)). "The failure to reach earning capacity, by itself, does not automatically equate to voluntary underemployment such that

income must be imputed." *Id.* "Although some of the precedents appear inconsistent, the common thread in cases when actual income versus earning capacity is at issue is that courts must closely examine the payor spouse's good faith and reasonable explanation for the decreased income." *Id.* "However, a payor spouse can be found to be voluntarily underemployed even in the absence of a bad faith motivation." *Id.* at 45, 677 S.E.2d at 626 (citing *Arnal v. Arnal*, 371 S.C. 10, 13, 636 S.E.2d 864, 866 (2006)). The South Carolina Child Support Guidelines (the Guidelines) address the issue of determining earning capacity. The Guidelines provide, "[i]n order to impute income to a parent who is unemployed or underemployed, the court should determine the employment potential and probable earnings level of the parent based on that parent's recent work history, occupational qualifications, and prevailing job opportunities and earning levels in the community." S.C.Code Ann. Regs. 114–4720(A)(5)(B) (2012).

Based on Husband's education, training, experience, age, health, and other factors, the family court imputed a gross annual income of $100,000 to Husband. The court noted it was mindful of the deteriorated state of the commercial real estate market, but found that considering Husband's skill set and experience, he should be able to find employment either as a commercial real estate broker or as a property manager. The family court further noted Husband had a proven history of "putting together real estate deals with little or no money invested on his part," and, based on his testimony, he was inclined to continue pursuing such deals.

While the family court considered several factors in imputing income to Husband, including his work history and occupational qualifications, the court failed to consider prevailing job opportunities and earning levels in the community. In *Sanderson v. Sanderson*, 391 S.C. 249, 253, 705 S.E.2d 65, 66 (Ct.App.2010), this court addressed a similar situation wherein the family court imputed an annual income of $64,000 to the husband after he lost his position earning $95,000 as a result of corporate downsizing. After noting there was no dispute that the husband lost his job through no fault of his own, this court then went on to review the evidence of record as related to the factors set forth in the [G]uidelines. *Id.* at 256–59, 705 S.E.2d at 68–69. The *Sanderson* court found the record was

"bereft of any testimony establishing the job opportunities or earning levels in the community" and determined the family court abused its discretion in imputing an annual income of $64,000 to Husband. *Id.* at 257, 705 S.E.2d at 69. The *Sanderson* court remanded the issue of the amount of income to be imputed to Husband to the family court to be determined in accordance with the evidence presented at trial. *Id.* at 260, 705 S.E.2d at 70.

Here, as in *Sanderson,* the family court failed to address the necessary factors delineated by the Guidelines concerning the prevailing job opportunities and earning levels in the community. Because the family court failed to address all of the factors required by the Guidelines, and because there is nothing in the record to suggest how the family court arrived at the annual income figure of $100,000 to be imputed to Husband, we remand the issue of Husband's imputed income to the family court pursuant to *Sanderson* for reconsideration based upon the factors set forth in the Guidelines.

## II. Alimony

Husband asserts the family court erred in awarding Wife $2,150 per month in alimony because the award was based on the court's improper finding of Husband's imputed income. Additionally, Husband contends the family court placed too much weight on Husband's ability to assemble commercial real estate ventures in the future.

Alimony functions as a substitute for the support normally incident to the marital relationship and should put the supported spouse in the same position, or as near as is practicable to the same position, enjoyed during the marriage. *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App. 2001). After finding an award of alimony is warranted, the family court must ensure its award is fit, equitable, and just. *Id.* When awarding alimony, the family court considers the following factors: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated

expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2012).

In light of our decision to remand the issue of Husband's imputed income to the family court, and because the parties' earnings is a factor the court must consider when awarding alimony, we remand the issue of alimony to the family court for consideration of the effects of this appeal.

### III. Division of the Marital Estate

Husband argues the family court erred in equitably dividing the marital estate.

Subject to certain exceptions, marital property is defined as "all real and personal property which has been acquired by the parties during marriage and which is owned as of the date of filing or commencement of marital litigation." S.C.Code § 20–3–630(A) (Supp.2012). In making an equitable apportionment of marital property, the family court must give weight in such proportion as it finds appropriate to all of the following factors:

(1) the duration of the marriage along with the ages of the parties at the time of the marriage and at the time of the divorce; (2) marital misconduct or fault of either or both parties, if the misconduct affects or has affected the economic circumstances of the parties or contributed to the breakup of the marriage; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) either spouse's need for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desira-

bility of awarding to the spouse having custody of any children the family home as part of equitable distribution or the right to live in it for reasonable periods; (11) the tax consequences to either party as a result of equitable apportionment; (12) the existence and extent of any prior support obligations; (13) liens and any other encumbrances on the marital property and any other existing debts; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) any other relevant factors that the family court expressly enumerates in its order.

S.C.Code Ann. § 20–3–620(B) (Supp.2012). "These criteria guide the family court in exercising its discretion over apportionment of the marital property and are nothing more than equities to be considered in reaching a fair distribution of marital property." *Jenkins v. Jenkins,* 401 S.C. 191, 198, 736 S.E.2d 292, 296 (Ct.App.2012) (citing *Johnson v. Johnson,* 296 S.C. 289, 297–98, 372 S.E.2d 107, 112 (Ct.App.1988)). "The criteria subserve the ultimate goal of apportionment, which is to divide the marital estate, as a whole, in a manner which fairly reflects each spouse's contribution to the economic partnership and also the relative effect of ending that partnership on each of the parties." *Id.* at 198–99, 736 S.E.2d at 296 (citing *Sanders v. Sanders,* 396 S.C. 410, 418, 722 S.E.2d 15, 18 (Ct.App.2011)).

The family court determined that divisions made through temporary orders prior to the final hearing constituted an equal division of assets. At the time of trial, the remaining assets to be divided included (1) Husband's real estate investments; (2) Paris Capital, a real estate investment LLC owned jointly by the parties; and (3) the marital residence. The family court held these assets should be sold and the proceeds divided equally between the parties.

On appeal, Husband argues (1) the division of the parties' real estate assets is inequitable because the family court did not account for the liabilities associated with these investments; (2) the family court's division of Paris Capital is inequitable because he is liable for all taxes related to the company; and (3) the family court's division of the marital residence is inequitable because it increased his liabilities.

Because Husband failed to raise any of these issues in his Rule 59(e), SCRCP, motion, we find these issues are not preserved for our review. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) (holding an issue must have been raised to and ruled upon by the trial court in order to be preserved for appellate review). Therefore, we affirm the family court's division of the marital estate.

■ As to the real estate investments and Paris Capital, which were discussed at oral argument, we find that even assuming they were preserved for review the family court did not err in dividing these assets.

At the time of trial, Husband held an interest in eight investment companies (the LLCs). The family court found an in-kind division of the LLCs was impossible due to the restrictions on Husband's ability to transfer his ownership interest. Therefore, the court granted Wife a 50% equitable interest in Husband's shares of these companies. The family court also ordered Husband to pay Wife 50% of the proceeds from the sale of the LLCs. Husband contends he is solely responsible for the debts associated with the LLCs. However, the family court order specifically provides:

> Husband shall be responsible for the payment of the debts and expenses associated with each real estate investment. Husband shall indemnify and hold Wife harmless therefrom. Husband shall be entitled to reimbursement from the net sales proceeds any principal reduction on any debt instrument related to the real estate investments from the date of this order forward made by him through his direct contribution of additional paid capital.

Therefore, although Husband is responsible for the payment of any debts associated with the LLCs, he is entitled to reimbursement for any debt paid or capital contribution upon the sale of the properties. Thus, the family court did not err in dividing these investments.

■ As to Paris Capital, the family court found Husband had received the direct benefits of the incomes derived from Paris Capital, and therefore, he should bear the tax liability arising from Paris Capital from January 1, 2011, forward. At oral argument, Wife agreed that Husband was only responsible for taxes on money he received as income from Paris

Capital, and not on any money he reinvested in Paris Capital for operational necessities. This division was not inequitable, and, therefore, the family court did not err in dividing Paris Capital.

## IV. Attorney's Fees

Husband argues the family court erred in awarding Wife attorney's fees based on his imputed income.

 Section 20-3-130(H) of the South Carolina Code (Supp.2012) authorizes the family court to order payment of litigation expenses, including attorney's fees, to either party in a divorce action. "The decision to award attorney's fees is within the family court's sound discretion, and although appellate review of such an award is de novo, the appellant still has the burden of showing error in the family court's findings of fact." *Lewis v. Lewis*, 400 S.C. 354, 372, 734 S.E.2d 322, 331 (Ct.App.2012). In determining whether to award attorney's fees, the following factors should be considered: "(1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living." *E.D.M. v. T.A.M.*, 307 S.C. 471, 476-77, 415 S.E.2d 812, 816 (1992). If an award of attorney's fees is appropriate, the reasonableness of the fees should be determined according to: "(1) the nature, extent, and difficulty of the case; (2) the time necessarily devoted to the case; (3) professional standing of counsel; (4) contingency of compensation; (5) beneficial results obtained; (6) customary legal fees for similar services." *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

Because we have remanded the issues of imputed income and alimony to the family court, we remand the issue of attorney's fees as well for consideration of the effects of this appeal. *See Smith v. Smith*, 386 S.C. 251, 270-71, 687 S.E.2d 720, 731 (Ct.App.2009) (remanding the issue of attorney's fees to the family court for reconsideration when the effects of the family court's decision on remand may alter its "analysis of the 'beneficial results obtained at trial' ").

## CONCLUSION

We remand the issues of imputed income, alimony, and attorney's fees to the family court for reconsideration. We affirm the family court's division of the marital estate.

**AFFIRMED IN PART AND REMANDED.**

HUFF and GEATHERS, JJ., concur.