722 S.E.2d 15

**Latane S. SANDERS, Appellant/Respondent,**

**v.**

**Roy SANDERS, Respondent/Appellant.**

**No. 4925.**

Court of Appeals of South Carolina.

Heard Oct. 4, 2011.
Decided Dec. 21, 2011.

412

Joseph M. Ramseur, Jr., of Greenville, for Appellant/Respondent.

Kimberly F. Dunham, of Greenville, for Respondent/Appellant.

WILLIAMS, J.

On appeal, Latane Sanders (Wife) contests the family court's decision to treat her AG Edwards account (AG account) as marital property. Alternatively, Wife argues the family court erred by dividing the marital estate equally. On cross-appeal, Roy Sanders (Husband) claims the family court erred in determining the date for valuation of the marital assets, valuing and awarding the marital home, and classifying certain items as nonmarital assets. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife were married on August 9, 1973, and no children were born of the marriage. On the date of the final hearing, Husband was fifty-eight years old and Wife was fifty-seven years old. After thirty-five years of marriage, Wife discovered Husband engaged in an adulterous affair and filed a complaint, seeking among other things, alimony, equitable division of marital assets and debts, and attorney's fees and costs. Husband did not file a responsive pleading.

At the final hearing on March 31, 2009, the family court heard testimony from the parties and their witnesses. It also received into evidence numerous financial documents pertaining to the parties' income and inheritance, as well as evidence regarding the assets and debts of the marital estate.

In its final order, the family court granted Wife a divorce on the statutory grounds of adultery. Despite having liquidated the account six months prior to filing for divorce, the family court found Wife's AG account, which contained $96,000, was a marital asset and included this amount in the marital estate. The family court relied upon Wife's expert witness in valuing the marital residence and granted Wife ownership of the residence while requiring her to pay Husband his share of the value of their home. In addition, the family court valued Wife's three different retirement accounts as of the date of the final hearing based on "passive market depreciation" since the date of filing. The family court also found that items identified as Wife's nonmarital personal property on the Schedule A list were properly established as nonmarital assets.

Both parties filed Rule 59(e), SCRCP, motions. In an order dated July 24, 2009, the family court denied both parties' motions to reconsider. This cross-appeal followed.

## STANDARD OF REVIEW

On appeal from the family court, this court reviews factual and legal issues de novo. *Simmons v. Simmons,* 392 S.C. 412, 414, 709 S.E.2d 666, 667 (2011); *Lewis v. Lewis,* 392 S.C. 381, 386, 709 S.E.2d 650, 651–52 (2011). Although this court reviews the family court's findings de novo, we are not required to ignore the fact that the trial court, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Lewis,* 392 S.C. at 385, 709 S.E.2d at 651–52. The burden is upon the appellant to convince this court that the family court erred in its findings. *Id.*

## LAW/ANALYSIS

### I. Wife's Appeal

#### A. AG Edwards Account

Wife asserts the family court erred in finding her AG account to be a marital asset. We disagree.

Section 20–3–630 of the South Carolina Code (Supp.2010) defines marital property as "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation ... regardless of how legal title is held...." However, "property acquired by either party by inheritance, devise, bequest, or gift from a party other than the spouse" is exempted as marital property under section 20–3–630. S.C.Code Ann. § 20–3–630(A)(1) (Supp.2010).

The nonmarital character of inherited property may be lost if "the property becomes so comingled as to be untraceable; is utilized by the parties in support of the marriage; or is titled jointly or otherwise utilized in such manner as to evidence an intent by the parties to make it marital property." *Hussey v. Hussey,* 280 S.C. 418, 423, 312 S.E.2d 267, 270–71 (Ct.App.1984). The phrase "so comingled as to be untracea-

ble" is important because the mere comingling of funds does not automatically make them marital funds. *Wannamaker v. Wannamaker*, 305 S.C. 36, 40, 406 S.E.2d 180, 182 (Ct.App. 1991).

■ At trial, Wife presented evidence that she inherited at least $196,000 from her mother, father, and sister. In addition, the record reveals several different instances in which Wife would deposit an inheritance check into the parties' joint checking account with Bank of America (joint account), only to transfer the exact sum a few days later into her AG account. Based on this information alone, we agree with Wife that the act of depositing an inheritance into the parties' joint account does not automatically render the inherited funds to be marital property. *See Miller v. Miller*, 293 S.C. 69, 71, 358 S.E.2d 710, 711 (1987) ("An unearned asset that is derived directly from nonmarital property also remains separate unless transmuted, as does property acquired in exchange for nonmarital property.").

Here, however, the evidence shows the funds from the AG account were often used by Wife in support of the marriage, evincing her intent to make it marital property. *See Johnson v. Johnson*, 296 S.C. 289, 295, 372 S.E.2d 107, 110 (Ct.App. 1988) ("As a general rule, transmutation is a matter of intent to be gleaned from the facts of each case."). When questioned at trial, Wife conceded funds were used from the AG account to improve the marital residence, purchase furniture, cover medical expenses, go on vacation, and to pay for household expenses. Moreover, Wife admitted on cross-examination that money readily moved back and forth from Husband's business account into the joint account and from the AG account into the joint account to pay for marital expenses. Wife's concession was corroborated by the testimony of Husband's expert witness, Wyatt Henderson (Henderson), who informed the family court he was able to trace transactions in which money was moved from Husband's business account to the joint checking account and then the same day transferred into the AG account. In addition, Henderson could only trace $81,000 of the total amount Wife claimed to have inherited, rendering the remaining funds "so comingled as to be untraceable." *See Wannamaker*, 305 S.C. at 40, 406 S.E.2d at 182. Based on this evidence, the family court found "Wife's AG Edwards

account was commingled with marital funds to the extent the inherited and gifted funds can no longer be traced and identified." We agree with the family court that Husband proved assets from the inheritance were transmuted into marital property. Husband demonstrated Wife commingled the inheritance funds with funds from the parties' marital account and used funds from the account to support the marriage. *See Wannamaker,* 305 S.C. at 39, 406 S.E.2d at 182 (holding that to show transmutation, the spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties regarded the property as the common property of the marriage). Moreover, during oral argument, counsel for Wife conceded that the record is unclear as to the total amount of either parties' exact contributions during their thirty-five year marriage. Therefore, we find no error.

In addition to finding the AG account part of the marital estate, the family court questioned Wife's withdrawals from this account. Shortly after discovering Husband's adultery, Wife withdrew funds in $9,000 increments from the AG account, totaling $96,000, to repay a debt she owed. Wife did not present any evidence of an actual obligation or a receipt acknowledging satisfaction of a $96,000 debt. Although the family court did not explicitly find Wife fraudulently withdrew $96,000 from the AG account, we find, in our review of the record, that Wife attempted to "unfairly extinguish ownership of marital property before the date of filing." *See Shorb v. Shorb,* 372 S.C. 623, 632, 643 S.E.2d 124, 128 (Ct.App.2007). Accordingly, we affirm the family court's finding that Wife's AG account should be included in the marital estate.

## B. Equitable Division of Marital Estate

■ Wife argues, in the alternative, that even if the AG account is to be included in the marital estate, the family court erred in dividing the marital estate equally. We disagree.

■ "Although statutory factors provide guidance, there is no formulaic approach for determining an equitable apportionment of marital property." *Lewis,* 392 S.C. at 391, 709 S.E.2d at 655. "Upon dissolution of the marriage, marital property should be divided and distributed in a manner [that] fairly reflects each spouse's contribution to its acquisition,

regardless of who holds legal title." *Id.* The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership. *See Johnson,* 296 S.C. at 298, 372 S.E.2d at 112.

In making an equitable apportionment of marital property, the family court must give weight in such proportion as it finds appropriate to all of the following factors:

(1) the duration of the marriage along with the ages of the parties at the time of the marriage and at the time of the divorce; (2) marital misconduct or fault of either or both parties, if the misconduct affects or has affected the economic circumstances of the parties or contributed to the breakup of the marriage; (3) the value of the marital property and the contribution of each spouse to the acquisition, preservation, depreciation, or appreciation in value of the marital property, including the contribution of the spouse as homemaker; (4) the income of each spouse, the earning potential of each spouse, and the opportunity for future acquisition of capital assets; (5) the health, both physical and emotional, of each spouse; (6) either spouse's need for additional training or education in order to achieve that spouse's income potential; (7) the nonmarital property of each spouse; (8) the existence or nonexistence of vested retirement benefits for either spouse; (9) whether separate maintenance or alimony has been awarded; (10) the desirability of awarding to the spouse having custody of any children the family home as part of equitable distribution or the right to live in it for reasonable periods; (11) the tax consequences to either party as a result of equitable apportionment; (12) the existence and extent of any prior support obligations; (13) liens and any other encumbrances on the marital property and any other existing debts; (14) child custody arrangements and obligations at the time of the entry of the order; and (15) any other relevant factors that the family court expressly enumerates in its order. S.C.Code Ann. § 20–3–620(B) (Supp.2010).

These criteria are intended to guide the family court in exercising its discretion over apportionment of marital property. *Johnson,* 296 S.C. at 297, 372 S.E.2d at 112. The

family court has the discretion to decide what weight to assign various factors. *Greene v. Greene,* 351 S.C. 329, 340, 569 S.E.2d 393, 399 (Ct.App.2002). On review, this court looks to the fairness of the overall apportionment, and if the end result is equitable, the fact that this court might have weighed specific factors differently than the family court is irrelevant. *Johnson,* 296 S.C. at 300, 372 S.E.2d at 113.

Here, the family court's order explicitly states that the court considered all the statutory factors in equitably apportioning the parties' assets. The family court indicated in its order it based the division of assets on the following specific factors: the parties' income; the nonmarital assets and debts; the parties' health; the value of the parties' retirement accounts; the duration of the marriage; and the direct contributions of both parties to the marriage. Our review of the record convinces us the family court sufficiently addressed the statutory factors governing equitable apportionment. Furthermore, in considering the overall fairness of the apportionment, we find the end result to be equitable. Accordingly, we find the family court's equitable distribution is supported by a preponderance of the evidence. *See Deidun v. Deidun,* 362 S.C. 47, 58, 606 S.E.2d 489, 495 (Ct.App.2004) ("If the end result is equitable, the fact that the appellate court would have arrived at a different apportionment is irrelevant.").

## II. Husband's Cross–Appeal

### A. Date of Valuation

Husband first asserts the family court erred in valuing his assets as of the date of filing while valuing Wife's assets as of the date of the final hearing. We agree.

In general, marital property that is subject to equitable distribution is valued as of the date the marital litigation is filed or commenced. *Fields v. Fields,* 342 S.C. 182, 186, 536 S.E.2d 684, 686 (Ct.App.2000). However, the parties may be entitled to share in any appreciation or depreciation in marital assets occurring after separation but before divorce. *See Dixon v. Dixon,* 334 S.C. 222, 228, 512 S.E.2d 539, 542 (Ct.App.1999) ("It is an unfortunate reality that, given the volume of cases handled by our family courts, there often is a substantial delay between the commencement of an action and

its ultimate resolution. Thus, it is not unusual for the value of marital assets to change, sometimes substantially, between the time the action was commenced and its final resolution.").

In the present case, Husband asserts it is inequitable to value Wife's retirement as of the date of the final hearing while utilizing Husband's financial declaration valued as of the date of filing. Husband cites to *Gardner v. Gardner*, 368 S.C. 134, 137, 628 S.E.2d 37, 38 (2006), in support of his argument. In *Gardner*, the Husband's retirement account was the asset at the center of the disagreement between the parties. *Id.* at 136, 628 S.E.2d at 38. While litigation was pending, the Husband died and his son was appointed as the personal representative of the estate. *Id.* at 135, 628 S.E.2d at 37. As a result of the Husband's death, the retirement account ceased to exist, but the supreme court noted that "other assets awarded to *both Husband and Wife declined* in value during the litigation." *Id.* at 136, 628 S.E.2d at 38 (emphasis added). Because there was not an accurate accounting as to the appropriate values for the marital property while the litigation was pending, the supreme court held that the date of the filing of the litigation should be used as the date of valuation. *Id.* at 136–137, 628 S.E.2d at 38.

In *Gardner*, both the Husband and the Wife had assets that declined in value from the date of filing until the time of Husband's death while litigation was pending. *Id.* at 136, 628 S.E.2d at 38. Here, despite the fact that the final hearing was approximately two years after Wife filed for divorce, Husband failed to offer any evidence of the values for the marital property at the time of the final hearing. If there is in fact appreciation or depreciation to his accounts, then it is incumbent upon Husband to present evidence of such changes at trial. *See Arnal v. Arnal*, 363 S.C. 268, 293, 609 S.E.2d 821, 834 (Ct.App.2005) ("[B]oth parties are entitled to share in any appreciation or depreciation that occurs to marital property after separation but before divorce."). Moreover, it is undisputed that Wife's accounts declined in value and, therefore, it would be unfair to value her accounts as of the date of the commencement of the action. *See Johnson*, 296 S.C. at 300, 372 S.E.2d at 113 (holding an appellate court looks to the fairness of the overall apportionment).

Husband's failure to present evidence of an updated financial declaration at the final hearing precludes this court from definitively valuing Husband's assets. Instead of penalizing Wife by utilizing a value of an asset that no longer exists and utilizing the date of filing as Husband requests, we find the better practice is for both parties to share in any appreciation or depreciation in marital assets. *See Smith v. Smith,* 294 S.C. 194, 203, 363 S.E.2d 404, 409 (Ct.App.1987) ("We know of no authority . . . that holds that only one spouse is entitled to any appreciation in marital assets that occurs after the parties separate and before the parties are divorced. We would think both parties would be entitled to any such appreciation."). Following the precedent established in *Gardner* of valuing both parties' assets at the same point in time while also acknowledging that Wife was diligent in providing an updated financial declaration, we reverse and remand this issue with specific instructions to allow additional evidence on the values of Husband's retirement accounts at the time of the final hearing and to divide the retirement accounts consistent with the findings in this opinion.

**B. Valuation of Marital Residence**

■ Husband next asserts the family court erred in utilizing Wife's valuation of the marital residence. In addition, Husband contends the family court committed error in granting Wife possession of the marital property. We disagree.

■ "The family court has broad discretion in valuing the marital property. A family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented." *Pirri v. Pirri,* 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct.App.2006); *see also Woodward v. Woodward,* 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct.App.1987) (affirming the family court's valuation of property that was within the range of evidence presented); *Smith,* 294 S.C. at 198, 363 S.E.2d at 407 (noting that the family court has the discretion to accept one party's valuation over another party's valuation).

We find sufficient evidence in the record to support the family court's valuation of the marital home and acreage. Both parties presented expert testimony regarding the value

of the ten and one-half acres on which the parties' mountain-view home was situated. Wife's appraiser, Jim Martin, testified the fair market value of the property was $235,000.[1] Husband's appraiser, Tim Kastner, determined the house and land was worth $360,000. In addition, Husband specifically testified, as he was qualified to do as owner of the property, that the marital home and ten and one-half acres had a value of $380,000. *See Gauld v. O'Shaugnessy Realty Co.*, 380 S.C. 548, 560, 671 S.E.2d 79, 86 (Ct.App.2008) ("As a general principle, a landowner who is familiar with her property and its value, is allowed to give her estimate as to the value of the land and damage thereto, even though she is not an expert.") (internal citation omitted). In accepting Wife's valuation of the marital home and land, the family court specifically found Mr. Martin's appraisal more credible and reliable than Mr. Kastner's appraisal due to a significant error discovered on cross-examination that was material to Mr. Kastner's valuation. As a result, the family court concluded Mr. Kastner's error undermined his ultimate opinion of the fair market value of the property. Because the family court was free to accept Wife's valuation over Husband's valuation, we find the family court properly utilized Wife's valuation of the marital home and acreage.

## C. Wife's Nonmarital Assets

Last, Husband claims the family court erred in finding items 178 through 237 on Schedule A were Wife's nonmarital assets. We agree and remand this issue to the family court.

In the instant case, the family court made the following pertinent finding of fact:

Attached hereto as Schedule A is a list of the parties' furniture, personal property, and furnishings. Schedule A allocates each item as either a marital asset or a non-marital asset to each party. The characterization of this property as marital or non-marital was a contentious issue. Wife claimed that she purchased many items of furniture and

---

1. The family court noted in its final order that, prior to being retained by Wife, Mr. Martin was first engaged by Husband's attorney to appraise the house and land for purposes of this litigation and that he concluded the property was worth $235,000.

furnishings using money she inherited or which she was gifted. Wife also claimed that certain items of personal property, including several items of jewelry, where [sic] gifted to her by Husband's mother. *As Husband's mother did not testify, I find that any gifts of personal property she made were marital. I further find that Wife's inheritance and gifts were transmuted and the items she purchased with such funds are marital.* Those items identified on Schedule A as Wife's non-marital were properly established as non-marital assets.

(emphasis added). However, this finding of fact is inherently contradictory to the family court's conclusion of law that "Wife shall retain sole and exclusive ownership of the items of personal property and furniture set forth under the column labeled 'Wife's Non–Marital' in Schedule A."

A review of Schedule A characterizes most of the items Husband contests as Wife's non-marital property with an acquisition source as a "[g]ift to Wife from Wife's mother." [2] The family court specifically found that "Wife's inheritance and gifts were transmuted and the items she purchased with such funds are marital." While there is evidence to sustain this finding and subject items 178 through 237 to equitable division, the family court directly contradicts itself in concluding Wife "shall retain sole and exclusive ownership of the items of personal property and furniture set forth under the column labeled 'Wife's Non–Marital' in Schedule A." Moreover, it is perplexing to this court why Husband contests all of the items 178 through 237 on appeal when the family court listed items 183, 203, 221, and 222 on Schedule A as Husband's nonmarital property.

While the family court is instructed to "set forth the specific findings of fact and conclusions of law to support [its] decision," its failure to do so does not always require a remand.

---

2. While this court recognizes Schedule A includes many more personal property items characterized as Wife's non-marital property with an acquisition source as a "[g]ift to Wife from Wife's mother" or "[i]nherited from Wife's mother," we decline to address these remaining property items as Husband only contests items 178 through 237. Therefore, the family court's allocation of those assets is the law of the case. *See In re Morrison*, 321 S.C. 370, 372 n. 2, 468 S.E.2d 651, 652 n. 2 (1996) (noting an unappealed ruling becomes law of the case and precludes further consideration of the issue on appeal).

Rule 26(a), SCRFC. "[W]hen an order from the family court is issued in violation of Rule 26(a), SCRFC, the appellate court 'may remand the matter to the trial court or, where the record is sufficient, make its own findings of fact in accordance with the preponderance of the evidence.'" *Griffith v. Griffith*, 332 S.C. 630, 646–47, 506 S.E.2d 526, 535 (Ct.App.1998) (quoting *Holcombe v. Hardee*, 304 S.C. 522, 524, 405 S.E.2d 821, 822 (1991)). However, we find the record in the instant case is insufficient to allow such a review due to the contradictory nature of the family court's order and Husband's appeal of items 178 through 237 of Schedule A in its entirety. Accordingly, we reverse and remand to the family court for further proceedings on this issue.

## CONCLUSION

In summary, the family court's rulings to include Wife's AG account as a marital asset and to equitably divide the marital assets are affirmed. In addition, the valuation of the marital residence is affirmed. The ruling as to different dates for valuing Wife's and Husband's retirement accounts is reversed and remanded for further proceedings consistent with this opinion. In addition, the case is also remanded for further proceedings regarding the disposition of items 178–237 in Schedule A. Accordingly, the family court's order is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

SHORT and GEATHERS, JJ., concur.