# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Annie R. Jackson, Respondent,

v.

Sammy Lee Jackson, Louise Jackson, and Walter Williams, Appellants.

Appellate Case No. 2016-001208

———————

Appeal From Darlington County
Cely Anne Brigman, Family Court Judge

———————

Opinion No. 5785
Submitted October 1, 2019 – Filed December 9, 2020

———————

## AFFIRMED IN PART AND REVERSED IN PART

———————

M. Rita Metts, of Metts Law Firm, of Columbia, for Appellants.

Annie R. Jackson, of Darlington, pro se.

———————

**WILLIAMS, J.:** Sammy Lee Jackson (Husband) appeals the family court's order granting Annie Jackson (Wife) a divorce and dividing the marital estate. Husband argues the family court erred in (1) failing to equitably divide the marital estate; (2) ordering him to pay half of their minor child's (Daughter's) graduation expenses and elective international school trip (the School Trip) costs; and (3) ordering him to pay alimony. We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

Husband and Wife married in Darlington, South Carolina, in 1984 and subsequently moved to New York. Husband and Wife both worked, and Wife took care of their home and children. The parties had three children, but two were emancipated at the time this action was filed; the other child—Daughter—was in high school and living with Wife.

In 1998, Wife moved back to Darlington due to Husband's infidelity. Husband remained in New York but periodically traveled to Darlington, and the parties continued a marital relationship until they separated in 2006.

In 2007, Husband was convicted of check and credit card fraud. Husband was sentenced to fourteen months' imprisonment and was ordered to pay restitution. He was released from prison in 2008.

In March 2008, Wife obtained a family court order requiring Husband to pay $236.53 in weekly child support. Husband failed to make these payments. The family court reduced Husband's support obligation in 2011 due to the emancipation of the parties' two oldest children. In the same ruling, the court ordered Husband to make payments towards his accrued child support arrearage.

In 2012, Husband suffered an injury and began receiving Social Security Disability (SSD). However, neither he nor Wife received SSD benefits for Daughter because he did not disclose on his application that he had children. In 2013, Wife contacted the South Carolina Department of Social Services (DSS) regarding Husband's failure to pay child support. As a result, Husband began paying the child support, and Wife also started receiving SSD benefits for Daughter.

On March 20, 2014, Wife filed an action in family court, seeking a divorce on the grounds of adultery or one year's continuous separation; primary custody of Daughter; alimony; an upward modification of child support; a restraining order; and attorney's fees. Husband filed an answer and counterclaim, seeking a divorce on the ground of adultery; equitable division of the marital estate; an order denying Wife alimony, custody, and child support; and attorney's fees.[1]

---

[1] Husband initially denied committing adultery but admitted at trial to two affairs during the marriage and that the affairs ended three or four years before trial. One affair resulted in a child born in 2003.

At the time of trial, Husband was unable to work, receiving SSD and Workers' Compensation (Workers' Comp) benefits.[2] Wife worked in school cafeterias earning minimum wage from 2004 until 2013. She stopped working because of a disability, and she had a pending SSD application. Wife received approximately $725 a month for Daughter's care—comprised of Husband's SSD benefits and child support—and $320 a month in food stamps.

Husband testified and offered documentation of outstanding back taxes, credit card debts, and court ordered restitution, all of which existed at the time the marital litigation began.[3] Husband asserted Wife's name was on all of the credit cards and she specifically used a Macy's credit card. However, he did not offer the cards as evidence, and he did not offer any receipts or billing statements showing Wife used the cards. Wife denied use of the credit cards, claiming Husband put her name on the credit card applications. Wife also asserted the parties began filing taxes separately in 1998.

Wife lives in a home on Society Hill Road (the Society Hill Property) that she and her siblings inherited in 2001. Wife agreed to purchase her siblings' interest for five dollars and future installment payments, and they conveyed the Society Hill Property to her in 2010. She testified she was still paying each sibling but was unable to regularly pay.

Husband lives in Brooklyn, New York. He admitted he purchased property on Crane Lane (the Crane Lane Property) but claimed he sold it back to the previous owner after learning it was subject to a substantial lien. He did not offer any other evidence of this transaction.

By order dated May 9, 2016, the family court found Husband's conduct contributed to the parties' separation and granted Wife a divorce on the ground of adultery.[4] The court imputed a monthly income to Husband of $4,000 based on his lifestyle, and the family court also imputed a monthly income to Wife of $1,256 per month

---

[2] Husband submitted a financial declaration on the first day of trial, but he testified it was not accurate. His financial declaration listed a monthly income of $2,832, but he testified his income fluctuated and could be as high as $3,500 per month. The financial declaration also listed $4,483 in monthly expenses, but he testified they were closer to $3,200 per month.

[3] Husband's testimony as to the amounts he owed for these obligations was inconsistent with the amounts in the record and in his appellate brief.

[4] Husband did not appeal this finding.

based on minimum wage. The family court gave Husband a credit for a lump sum payment Wife previously received from Social Security for Daughter but found Husband still had a $34,869.93 arrearage in child support. The court ordered Husband to continue to pay $47.30 per week in child support for Daughter and to pay $9.46 per week toward his arrearage. The court also ordered his arrearage payment to increase to $100 per week once Daughter was emancipated. The family court found that Husband testified he was willing to pay for one-half of Daughter's graduation expenses and one-half of the School Trip and ordered him to pay accordingly. The family court awarded the Crane Lane Property to Wife, finding it was marital property and that Husband waived any interest in the property. The family court found Wife inherited the Society Hill Property and it was Wife's nonmarital property. The court also ordered an equal division of any future lump sum settlement from Social Security, Workers' Comp, or buyout from Husband's former employer, as well as Husband's retirement account. The court held Husband's criminal restitution was not a marital debt and both parties were responsible for the remaining debts in their respective names. The family court awarded Wife $200 per month in permanent periodic alimony and ordered the obligation to increase to $300 per month once Daughter was emancipated. The family court also ordered Husband to pay $5,000 of Wife's attorney's fees. This appeal followed.

**ISSUES ON APPEAL**

I.    Did the family court err in ordering Husband to pay one-half of the expenses for Daughter's School Trip and graduation?

II.   Did the family court err in dividing the marital estate?

III.  Did the family court err in requiring Husband to pay alimony?

**STANDARD OF REVIEW**

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). On appeal from the family court, an appellate court reviews factual and legal issues de novo. *Stoney v. Stoney*, 422 S.C. 593, 596, 813 S.E.2d 486, 487 (2018) (per curiam). Thus, an appellate court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Lewis*, 392 S.C. at 384, 709 S.E.2d at 651. However, this broad scope of review does not require an appellate court to disregard the fact that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility

and assign comparative weight to their testimony. *Id.* at 385, 392, 709 S.E.2d at 651–52, 655. Moreover, the appellant bears the burden of convincing an appellate court that the family court committed error or that the preponderance of the evidence is against the family court's findings. *Id.* at 392, 709 S.E.2d at 655. The appellant also bears the burden of providing an appellate court with an adequate record for review. *Ricigliano v. Ricigliano*, 413 S.C. 319, 338, 775 S.E.2d 701, 711–12 (Ct. App. 2015).

**LAW/ANALYSIS**

As an initial matter, we find Husband abandoned several of his issues on appeal. Husband argues the family court erred in (1) imputing his income, (2) ordering him to pay attorney's fees, and (3) denying a motion for recusal. However, Husband did not cite any authority to support his assertions. Instead, he solely discussed the facts relating to his arguments and summarily concluded the family court erred. *See* Rule 208(b)(1)(E), SCACR (requiring each of the appellant's argument sections contain "discussion and citations of authority"); *Bryson v. Bryson*, 378 S.C. 502, 510, 662 S.E.2d 611, 615 (Ct. App. 2008) ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."); *see also Butler v. Butler*, 385 S.C. 328, 343, 684 S.E.2d 191, 199 (Ct. App. 2009) (declining to address issues on the merits after finding the issues were abandoned on appeal because the appellant cited no statute, rule, or case to support his arguments and made conclusory statements without supporting authority). Therefore, we find these issues are abandoned on appeal and affirm the family court on these issues.

**I.     Daughter's Expenses**

Husband argues the family court erred in ordering him to pay part of Daughter's School Trip and graduation expenses because the Child Support Guidelines (the Guidelines) do not obligate him to pay for elective school trips and graduation expenses. We agree in part.

If a party concedes an issue before the family court, the issue is not preserved for appellate review. *See Widman v. Widman*, 348 S.C. 97, 118–19, 557 S.E.2d 693, 704–05 (Ct. App. 2001). When determining the appropriate child support amount, the family court considers the Guidelines. *See* S.C. Code Ann. §§ 43-5-580(b) (2015), 63-17-470 (2010); S.C. Code Ann. Regs. 114-4710 (Supp. 2019). Regulation 114-4710 and subsection 63-17-470(C) list factors unaccounted for by the Guidelines that the family court is required to consider when determining

whether to deviate from the Guidelines.  Two of these factors are (1) "educational expenses[,] . . . includ[ing] those incurred for private, parochial, or trade schools, other secondary schools, or post-secondary education where there is tuition or related costs," and (2) consumer debts.  § 63-17-470(C)(1), (3); *see also* S.C. Code Ann. Regs. 114–4710(B)(1), (3).  The "educational expenses" factor has been interpreted as applying to the cost of attending a school.  *See LaFrance v. LaFrance*, 370 S.C. 622, 657–58, 636 S.E.2d 3, 21–22 (Ct. App. 2006) (affirming the family court's order that directed the husband to contribute to the tuition, "miscellaneous fees, books, uniforms, and school lunches" necessary for his children to attend private school), *overruled in part on other grounds by Arnal v. Arnal*, 371 S.C. 10, 636 S.E.2d 864 (2006); *see also Smith v. Smith*, 386 S.C. 251, 263–64, 687 S.E.2d 720, 726–27 (Ct. App. 2009) (reversing and remanding to the family court the issue of whether the cost of continued private school attendance was an appropriate deviation from the Guidelines).  "Deviation from the [G]uidelines should be the exception rather than the rule.  When the court deviates, it must make written findings that clearly state the nature and extent of the variation from the [G]uidelines."  S.C. Code Ann. Regs. 114-4710(B); *see also Sexton v. Sexton*, 321 S.C. 487, 491, 469 S.E.2d 608, 611 (Ct. App. 1996) ("Although the family court may deviate from the . . . Guidelines, any deviation must be justified and should be the exception rather than the rule.").

We find the family court did not err in ordering Husband to pay half of Daughter's graduation expenses.  The family court correctly found Husband conceded the issue of Daughter's graduation expenses because he testified he was willing to contribute to those expenses.  *See Widman*, 348 S.C. at 118–19, 557 S.E.2d at 704–05 (holding an issue is not preserved for appellate review if the party concedes the issue before the family court).  Although Husband's concession was to pay some of the expenses and not half, we find fifty percent of the cost to be a reasonable division based upon the parties' ability to contribute to these costs.

However, based on our de novo review, we conclude the family court erred in finding Husband conceded to contributing toward the costs of the School Trip.  *See Lewis*, 392 S.C. at 384, 709 S.E.2d at 651 (stating the appellate court reviewing family court orders has the authority to find facts in accordance with its own view of the preponderance of the evidence).  Daughter was eligible to go on the School Trip because of her excellent grades, but Wife could not afford to pay for the trip.  Husband was not asked about the School Trip during his testimony, and he did not state he was willing to pay for it.  Because this court has interpreted "educational expenses" to include the cost of school attendance but not elective field trips, we find the School Trip is not an appropriate deviation from the Guidelines.  *See*

*LaFrance*, 370 S.C. at 657–58, 636 S.E.2d at 21–22 (interpreting the "educational expenses" factor to include tuition, books, uniforms, lunches, and miscellaneous fees). Thus, we hold the family court erred in requiring Husband to pay for half of the School Trip. Further, even if the School Trip was a valid consideration, Husband's limited income coupled with his consumer debt weighs against requiring him to pay for this elective School Trip. *See* § 63-17-470(C)(3) (listing consumer debt as a factor to consider when deviating from the Guidelines). Therefore, we affirm the family court's order as to Daughter's graduation expenses but reverse the family court's order as to the School Trip.

## II.     Marital Estate

Husband asserts the family court erred in equitably apportioning the marital estate because it failed to apply the required statutory factors. Specifically, he argues the family court erred in (1) finding his debts were nonmarital, (2) finding the Society Hill Property was nonmarital, (3) ordering him to assign any interest in the Crane Lane Property to Wife, and (4) considering properties owned by Sammie Jackson. We agree in part.

Marital property is "all real and personal property which has been acquired by the parties during the marriage and which is owned as of the date of filing or commencement of marital litigation." S.C. Code Ann. § 20-3-630(A) (2014). When a marriage is dissolved, marital property "should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title." *Mallett v. Mallett*, 323 S.C. 141, 150, 473 S.E.2d 804, 810 (Ct. App. 1996) (per curiam); *see Sanders v. Sanders*, 396 S.C. 410, 418, 722 S.E.2d 15, 18 (Ct. App. 2011) ("The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership."). Subsection 20-3-620(B) of the South Carolina Code (2014) provides fifteen factors the family court must consider when apportioning the marital estate. "In reviewing a division of marital property, an appellate court looks to the overall fairness of the apportionment." *Brown v. Brown*, 412 S.C. 225, 235, 771 S.E.2d 649, 654 (Ct. App. 2015). "Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is *fair*." *Bojilov v. Bojilov*, 425 S.C. 161, 184, 819 S.E.2d 791, 804 (Ct. App. 2018) (quoting *Doe v. Doe*, 370 S.C. 206, 214, 634 S.E.2d 51, 55 (Ct. App. 2006)).

### A.     Marital Debt

Husband presented evidence of significant debts for credit cards, back taxes, and criminal restitution. He asserts these obligations should be presumed marital debts because they existed prior to the marital litigation and were incurred for the benefit of the marriage. He further claims Wife failed to rebut the presumption that the debts were marital. Based on our de novo review, we disagree.

"[A] marital debt is a debt incurred for the joint benefit of the parties regardless of whether the parties are legally liable or whether one party is individually liable." *Schultze v. Schultze*, 403 S.C. 1, 8, 741 S.E.2d 593, 597 (Ct. App. 2013) (quoting *Wooten v. Wooten*, 364 S.C. 532, 546, 615 S.E.2d 98, 105 (2005)). "There is a rebuttable presumption that a debt of either spouse incurred prior to the beginning of marital litigation is marital and must be factored in the totality of equitable apportionment." *Id*. "[W]hen a debt is proven to have accrued before the commencement of the marital litigation, the burden of proving the debt is nonmarital rests on the party who makes such an assertion." *Id*. "If the [family court] finds that a spouse's debt was not made for marital purposes, it need not be factored into the court's equitable apportionment of the marital estate, and the [family court] may require payment by the spouse who created the debt for nonmarital purposes." *Hickum v. Hickum*, 320 S.C. 97, 103, 463 S.E.2d 321, 324 (Ct. App. 1995); *see Kennedy v. Kennedy*, 389 S.C. 494, 503–04, 699 S.E.2d 184, 188 (Ct. App. 2010) (affirming the family court's finding that credit card debts were nonmarital after noting there was conflicting testimony and the family court was in a superior position to adjudge credibility).

### 1. Credit Cards

Husband argues the family court erred in finding the credit card debts were nonmarital. We disagree.

At trial, Wife testified she did not use the credit cards and Husband did not use the cards to support the marriage. Wife asserted she did not fill out the application for many of the cards and Husband put her name on them. The family court—finding Wife was more credible than Husband—found she rebutted the presumption that the credit cards were marital debt.[5] *See Lewis*, 392 S.C. at 392, 709 S.E.2d at 655

---

[5] In addition to considering the family court's credibility determination, our own review of the record leads us to similarly conclude that Wife was more credible than Husband. Husband provided evasive—and sometimes false—answers during trial and admitted his financial declaration was inaccurate on the day he filed it.

(stating the appellate court's de novo standard of review does not require it to disregard the family court's credibility determination); *Kennedy*, 389 S.C. at 503–04, 699 S.E.2d at 188 (affirming the family court's finding that credit card debts were nonmarital after noting there was conflicting testimony).

As the appellant, Husband must show the family court erred. *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655 (stating the appellant bears the burden of proving the family court erred or its findings are not supported by the preponderance of the evidence). Husband testified Wife used the credit cards, some of the cards were in both of their names, and he had receipts of the cards' use. However, he testified the cards and receipts were in New York and did not present any credit cards bearing Wife's name or produce receipts evincing (1) Wife's use of the credit cards or (2) what was purchased with the credit cards. *See Brown v. Odom*, 425 S.C. 420, 432, 823 S.E.2d 183, 189 (Ct. App. 2019) ("[A] party cannot sit back at trial without offering proof, then come to this [c]ourt complaining of the insufficiency of the evidence to support the family court's findings." (alterations in original) (quoting *Honea v. Honea*, 292 S.C. 456, 458, 357 S.E.2d 191, 192 (Ct. App. 1987))); *Hudson v. Hudson*, 294 S.C. 166, 169, 363 S.E.2d 387, 389 (Ct. App. 1987) (noting the party seeking equitable distribution must present evidence supporting his or her claim). The only documentary evidence of the credit card debts—collection letters, offers to settle, and a notice of garnishment—are addressed solely to Husband.

Based on the foregoing, we find Wife rebutted the presumption of marital debt through her aforementioned credible testimony and Husband failed to show the family court erred in finding the debt was nonmarital. *See Schultze*, 403 S.C. at 8, 741 S.E.2d at 597 ("[W]hen a debt is proven to have accrued before the commencement of the marital litigation, the burden of proving the debt is nonmarital rests on the party who makes such an assertion."). Accordingly, we find the credit card debts are nonmarital, and we affirm the family court.

### 2. Restitution

Next, Husband argues the family court erred in finding Husband's restitution was nonmarital. Husband asserts Wife should be partially responsible for paying his criminal restitution because she benefited from his criminal activity. We disagree.

Husband testified Wife knew of and benefited from his criminal activity. Although Wife testified she was aware of his criminal activity, the record is not clear whether Wife gained knowledge of his activity before or after his conviction in

2007. *Cf. Grumbos v. Grumbos*, 393 S.C. 33, 47, 710 S.E.2d 76, 84 (Ct. App. 2011) (stating the wife's credible testimony that she was unaware of the purported marital debts prior to filing for divorce was evidence that the debts were not incurred for the benefit of the marriage). Regardless, Wife, whom the family court found credible, testified Husband's activity occurred after she moved to South Carolina and Husband did not use the ill-gotten gains to support the marriage. *See Lewis*, 392 S.C. at 385, 392, 709 S.E.2d at 651–52, 655 (stating the appellate court's de novo review of the family court does not require it to disregard the family court's credibility determination). Because Husband presented no other evidence to show Wife or their children benefited from his criminal activity, we find the family court did not err in holding Husband solely responsible for his criminal restitution. *See Schultze*, 403 S.C. at 8, 741 S.E.2d at 597 ("[A] marital debt is a debt incurred for the *joint benefit of the parties . . . .*" (emphasis added) (quoting *Wooten*, 364 S.C. at 546, 615 S.E.2d at 105)); *see also Thompson v. Thompson*, 105 P.3d 346, 352–53 (Okla. Civ. App. 2004) (finding the wife's restitution was nonmarital debt and rejecting the wife's argument that the family benefited from her criminal activity because she did not provide proof that the family benefited from her embezzlement). We affirm the family court.

### 3. Tax Liability

Husband also argues the family court erred in failing to apportion some of his outstanding tax liability to Wife. We disagree.

Income taxes incurred by the parties can be marital debt. *See Barrow v. Barrow*, 394 S.C. 603, 611–12, 716 S.E.2d 302, 306–07 (Ct. App. 2011) (finding the family court erred in apportioning all of the remaining tax liability to the husband when the wife's tax payments represented thirty-five percent of the total marital tax liability while the wife benefited from fifty percent of the marital income).

Husband presented documentation for taxes due between 2002 and 2010. The parties stopped filing joint tax returns after Wife moved to South Carolina in 1998. Between 1998 and the parties' separation in 2006, Husband provided support to Wife totaling less than $500 annually. Then, despite the 2008 child support order, Husband still failed to consistently support the children until Wife contacted DSS in 2013. Husband did not present any evidence of (1) his income between 2002 and 2010 or (2) the amount of financial support he provided to Wife and their children during those years. Without this information, the family court and this court cannot determine how much Wife benefited from Husband's income during the years of his back taxes. *See Hudson*, 294 S.C. at 169, 363 S.E.2d at 389

(noting the party seeking equitable distribution must present evidence supporting his or her claim); *Cf. Sanders*, 396 S.C. at 421, 722 S.E.2d at 20 (stating the husband's failure to present evidence to the family court regarding the value of his assets precluded this court from assigning the assets a definitive value).  Based on our de novo review, we find the family court did not err in apportioning all of Husband's tax liability to him, and we affirm the family court.

### B.  Wife's Property

Husband argues the family court erred in determining the Society Hill Property was Wife's nonmarital property.  We agree in part.  Wife originally inherited the Society Hill Property in 2001, along with her six siblings, giving her a one-seventh interest in the property.  Then in 2010, Wife agreed to purchase the remaining six-sevenths interest in the property from her siblings for five dollars and future installment payments.  Because Wife obtained the remainder of the interests in the Society Hill Property in a different manner, the family court erred in finding the entirety of the Society Hill Property was inherited property and therefore nonmarital.  We examine each interest separately.

### 1.  The Nonmarital One-Seventh Interest

As to the one-seventh interest, we find it is nonmarital property.  Wife inherited this interest, and inherited property is nonmarital property.  *See* S.C. Code Ann. § 20-3-630(A)(1).  For this interest to be marital property, Husband must show it transmuted.  *See Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct. App. 2001).  "Transmutation is a matter of intent to be gleaned from the facts of each case.  The spouse claiming transmutation must produce objective evidence showing that, during the marriage, the parties themselves regarded the property as the common property of the marriage." *Id.*  "Such evidence may include placing the property in joint names, transferring the property to the other spouse as a gift, using the property exclusively for marital purposes, commingling the property with marital property, using marital funds to build equity in the property, or exchanging the property for marital property." *McMillan v. McMillan*, 417 S.C. 583, 591, 790 S.E.2d 216, 220 (Ct. App. 2016) (quoting *Smallwood v. Smallwood*, 392 S.C. 574, 579, 709 S.E.2d 543, 546 (Ct. App. 2011)).  Based on our review of the record, we find there is no evidence the parties intended to treat the property as marital property.  Wife testified she did not regard the property as marital property.  Husband testified he paid an electric bill for the Society Hill Property on one occasion, but he said he did so "out of the kindness of [his] heart."  This indicates he also did not view the Society Hill Property as marital property.  *See Murray v.*

*Murray*, 312 S.C. 154, 158, 439 S.E.2d 312, 315 (Ct. App. 1993) (finding the wife failed to produce objective evidence showing that real estate purchased by the husband prior to the marriage was regarded by the parties as common property during the marriage). Accordingly, as to Wife's inherited one-seventh interest in the Society Hill Property, we affirm the family court and find that it is nonmarital property.

### 2.     The Marital Six-Sevenths Interest

As to the six-sevenths interest in the Society Hill Property, we find it is marital property. Wife did not inherit this interest but purchased it from her siblings in 2010 by agreeing to pay five dollars and future installment payments. Because she purchased the property before she filed for a divorce in 2014, it is marital property. *See* § 20-3-630(A) (stating property acquired during the marriage and owned as of the date of commencement of marital litigation is marital property). Therefore, the family court erred insofar as it held the six-sevenths interest was nonmarital property.

However, despite concluding the family court erred in holding this interest was nonmarital, we find the family court's distribution of the interest to Wife fairly reflected her contribution, and Husband's lack thereof, to its acquisition. *See Bojilov*, 425 S.C. at 184, 819 S.E.2d at 804 ("Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is *fair*." (quoting *Doe*, 370 S.C. at 214, 634 S.E.2d at 55)); *see also* § 20-3-620(B)(3) (stating the family court must consider, among other factors, each spouse's contribution to the acquisition and preservation of marital property when equitably dividing the marital estate); *Mallett*, 323 S.C. at 150, 473 S.E.2d at 810 ("Upon dissolution of the marriage, property acquired during the marriage should be divided and distributed in a manner which fairly reflects each spouse's contribution to its acquisition, regardless of which spouse holds legal title."). Husband furnished no evidence that he was involved in the negotiation and execution of Wife's purchase of her siblings' interest. Husband also provided no evidence that (1) he gave any money to Wife for the purpose of acquiring the property or making the installment payments; (2) Wife used any of his provided support to make the payments; or (3) he was aware of Wife's purchase and payments prior to this action. *Cf. Sanders*, 396 S.C. at 421, 722 S.E.2d at 20 (stating the husband's failure to present evidence to the family court regarding the value of his assets precluded this court from assigning the assets a definitive value). The only evidence in the record of Husband financially contributing in any manner to the property was the aforementioned light bill. *See Mallett*, 323 S.C. at

150, 473 S.E.2d at 810 (stating the division of marital property should fairly reflect each spouse's contribution to the property's acquisition).

Based on the foregoing, we find the family court's error in designating the entirety of the Society Hill Property as Wife's nonmarital property does not disturb the fairness of its equitable division of the marital estate. *See Sanders*, 396 S.C. at 418, 722 S.E.2d at 18 ("The ultimate goal of apportionment is to divide the marital estate, as a whole, in a manner that fairly reflects each spouse's contribution to the economic partnership and also the effect on each of the parties of ending that partnership."); *see also Bojilov*, 425 S.C. at 184, 819 S.E.2d at 804 ("Even if the family court commits error in distributing marital property, that error will be deemed harmless if the overall distribution is *fair*." (quoting *Doe*, 370 S.C. at 214, 634 S.E.2d at 55)). Because Husband failed to show that the family court erred in its overall equitable division of the marital estate, we affirm the result reached by the family court.

## C.     Future Settlements

The family court found Husband did not oppose sharing any future settlement he might receive from Social Security, Workers' Comp, or his employer's buyout and ordered him to share equally any settlement he might receive. Husband argues this was error, but he failed to cite any authority to support his arguments. We find the issues of Husband sharing any Workers' Comp settlement or employer buyout are abandoned on appeal, and we affirm the family court. *See Bryson*, 378 S.C. at 510, 662 S.E.2d at 615 ("An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority."); *see also Butler*, 385 S.C. at 343, 684 S.E.2d at 199 (declining to address the issues on the merits after finding the issues were abandoned on appeal because the appellant cited no statute, rule, or case to support his arguments and made conclusory statements without supporting authority).

However, we address the family court's division of any future Social Security settlement because it implicates the family court's subject matter jurisdiction. "Subject matter jurisdiction is the power of a court to hear and determine cases of the general class to which the proceedings in question belong." *S.C. Dep't of Soc. Servs. v. Meek*, 352 S.C. 523, 530, 575 S.E.2d 846, 849 (Ct. App. 2002) (quoting *Pierce v. State*, 338 S.C. 139, 150, 526 S.E.2d 222, 227 (2000)). Lack of subject matter jurisdiction can be raised at any time by the parties or sua sponte by the court. *S.C. Dep't of Soc. Servs. v. Tran*, 418 S.C. 308, 314, 792 S.E.2d 254, 257 (Ct. App. 2016) (per curiam). Lack of subject matter jurisdiction cannot be waived

by consent of the parties, and this court has a duty to take notice and determine whether the family court had proper subject matter jurisdiction. *Id.* at 314–15, 792 S.E.2d at 257.

In the Social Security Act (the Act), an anti-assignment clause provides that "[t]he right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable . . . under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process." 42 U.S.C. § 407(a) (2018). Although Section 659 of the Act allows benefits to be reassigned for alimony, "any payment . . . by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses" is expressly excluded from the definition of alimony. 42 U.S.C. § 659(i)(3)(B)(ii) (2018). In *Simmons v. Simmons*, this court held (1) the Act's anti-assignment clause made Social Security benefits nonmarital for property divisions and (2) family courts lacked subject matter jurisdiction to equitably divide such benefits because the Act preempts state law. 370 S.C. 109, 115–16, 634 S.E.2d 1, 4–5 (Ct. App. 2006) ("It is axiomatic that an order entered by a court without subject matter jurisdiction is utterly void."). This court has also held a party's voluntary agreement to pay part of the benefits was "of no significance." *Id.* at 117, 634 S.E.2d at 5. "Because Congress preempted the Social Security arena, state courts do not have subject[ ]matter jurisdiction to mandate distribution of such benefits whether by agreement or otherwise." *Id.* at 118, 634 S.E.2d at 5.

Because the family court lacks subject matter jurisdiction to divide SSD benefits when equitably dividing marital property, we find the family court erred in ordering Husband to divide any future lump sum settlement from Social Security. *See id.* The fact that Husband may have conceded a willingness to divide any settlement is "of no significance." *Id.* at 117, 634 S.E.2d at 5. Accordingly, we reverse the family court on this issue.

### D.    Crane Lane Property

Husband argues the family court erred in awarding Wife the Crane Lane Property. We find this argument is unpreserved for appellate review.

On appeal, Husband claims he has a "rent-to-own" arrangement with the owner of the Crane Lane Property; however, he did not make this argument to the family court. At trial, Husband argued he had no interest in this property because he sold

it back to the previous owners. Because Husband makes a different argument on appeal than he did before the family court, we find this issue is unpreserved for our review, and we affirm the family court. *See Wilburn v. Wilburn*, 403 S.C. 372, 386 n.2, 743 S.E.2d 734, 742 n.2 (2013) ("[An] appellant cannot argue one ground at trial and another ground on appeal."); *Doe v. Roe*, 369 S.C. 351, 375–76, 631 S.E.2d 317, 330 (Ct. App. 2006) ("An issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the [family court] to be preserved for appellate review.").

### E. Sammie Jackson's Property

Husband argues the family court erred in finding real property titled in the name Sammie Jackson was marital property. Husband's contention is without merit. In its order, the family court noted that Wife asserted certain real property belonged to Husband. Another person named Sammie Jackson testified he owned the properties. The family court found the only real property held by Husband, Sammy Lee Jackson, was the Crane Lane Property. Because the family court did not rule Sammie Jackson's properties were part of the marital estate, this argument concerns a non-controversy. *See Sloan v. Greenville County*, 380 S.C. 528, 535, 670 S.E.2d 663, 667 (Ct. App. 2009) ("An appellate court will not pass judgment on moot and academic questions; it will not adjudicate a matter when no actual controversy capable of specific relief exists.").

## III. Alimony

Husband argues the family court erred in awarding Wife alimony. We disagree.

"Generally, alimony should place the supported spouse, as nearly as practical, in the same position as enjoyed during the marriage." *Craig v. Craig*, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005). "It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001). When determining alimony, the family court must consider the relevant statutory factors: (1) the marriage's duration along with the ages of the parties at the beginning of the marriage and at the beginning of the action; (2) each spouse's physical and emotional condition; (3) each spouse's educational background and whether either needs additional training or education to reach income potential; (4) each spouse's employment history and earning potential; (5) the standard of living enjoyed during the marriage; (6) each spouse's current and reasonably expected earnings; (7) each spouse's current and reasonably expected expenses; (8) marital and

nonmarital property; (9) custody of children; (10) marital misconduct; (11) tax consequences of any award; (12) existence and amount of any prior support obligation; and (13) any other relevant factor. S.C. Code Ann. § 20-3-130(C) (2014).

Husband argues the family court erred in ordering him to pay alimony because Wife already receives child support from him, he has limited income, and both parties have similar educations and bad health. Based on our de novo review, we find Husband failed to show the family court erred in awarding Wife alimony. *See Lewis*, 392 S.C. at 392, 709 S.E.2d at 655 (stating appeals from the family court are reviewed de novo and the appellant bears the burden of proving the family court erred or its findings are not supported by the preponderance of the evidence). First, we note a large portion of Husband's child support payments come from Social Security, which Husband conceded at trial is separate from his benefits disbursements. Second, his argument ignores the fact that Wife was unable to work and had no income at the time of trial. Therefore, Husband was in a superior financial position to Wife. These facts do not weigh against an order of alimony.

Husband also argues the family court failed to consider the parties' standard of living during the marriage. He asserts the family court failed to consider that Wife still maintained her marital standard of living at the time of the trial or that she could apply for divorced spouse benefits through Social Security. Husband contends that because the purpose of alimony is to allow the supported spouse to maintain, as nearly as practical, the marital standard of living and because Wife was able to maintain her standard of living despite Husband providing little support, he should not have to pay alimony. However, marital standard of living is only one of the thirteen factors to be considered in the award of alimony. *See* § 20-3-130(C) (stating the family court should consider (1) the marriage's duration and each spouse's age at the beginning of the marriage and at the beginning of the action; (2) each spouse's physical and emotional condition; (3) each spouse's educational background and whether either needs additional training or education to reach income potential; (4) each spouse's employment history and earning potential; (5) the standard of living enjoyed during the marriage; (6) each spouse's current and reasonably expected earnings; (7) each spouse's current and reasonably expected expenses; (8) marital and nonmarital property; (9) custody of children; (10) marital misconduct; (11) the tax consequences of any award; (12) existence and amount of any prior support obligation; and (13) any other relevant factor when awarding alimony). We find the family court properly considered evidence attendant to other relevant factors. The family court noted the parties had been married for thirty-one years, were in their early twenties when they married, and

were in their early fifties when they divorced. The family court also observed Husband's income was greater than Wife's at the time of trial and Husband's infidelity contributed to the breakup of the marriage. Moreover, solely considering the marital standard of living, Husband's argument is still without merit. The record shows Husband's conduct contributed to Wife's lower standard of living. Husband provided little support to Wife and their children after she moved to South Carolina before the family court ordered him to pay child support, and then, he habitually failed to pay child support. Because Husband contributed to Wife's lower standard of living, we find this factor does not weigh in favor of denying alimony. *See Patel v. Patel*, 347 S.C. 281, 290 555 S.E.2d 386, 391 (2001) (finding it inappropriate to consider the low standard of living as basis for not awarding alimony when the husband deliberately chose to keep the family in inadequate housing well below their means during the marriage); *Allen*, 347 S.C. at 184, 554 S.E.2d at 424 ("It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded."). Based on our de novo review, we affirm the family court.

**CONCLUSION**

The decision of the family court is therefore

**AFFIRMED IN PART AND REVERSED IN PART.**[6]

**HUFF and MCDONALD, JJ., concur.**

---

[6] We decide this case without oral argument pursuant to Rule 215, SCACR.